INES REED, RESPONDENT, v. V. E. KOCH, APPELLANT.*

In the Springfield Court of Appeals. Opinion filed March 2, 1926.

**1.—Trial—Demurrer.** Evidence most favorable to plaintiff must be taken as true on demurrer thereto.

**2.—Master and Servant—Incompetent and Careless Servant—What Necessary to Establish Negligence of Master in Hiring and Keeping Such Servant.** In order to recover against employer for negligence in hiring and continuing to employ an incompetent and careless fellow servant, plaintiff must prove that the negligence of the servant who caused the injury was habitual; that such habitual negligence was the proximate cause of the injury; that the master knew, or by the exercise of ordinary care should have known, of such incompetency; and that with such knowledge, either actual or constructive, the master negligently retained the servant in his employ.

**3.—Same—Foreman—Incompetent Employee.** Knowledge of foreman as to incompetency of employee is knowledge of master.

**4.—Same—Negligence of Master Held for Jury.** Negligence in employing teamster in road construction work who was given to use of intoxicants held for jury.

**5.—Same—Negligence of Servant Held Question for Jury.** Employee driving lead team of wheel scraper in road construction work **held** not contributorily negligent as matter of law when continuing to work while fellow servant driving other team attached to scraper was intoxicated, but question was for jury under evidence.

**6.—Same—Incompetence of Fellow Servant.** Mere knowledge by employee of fellow servant's incompetency will not necessarily defeat right to recover for injuries sustained by reason thereof.

**7.—Same—Contributory Negligence of Servant.** Employee's contributory negligence is question of fact, where reasonable minds might differ on evidence.

**8.—Same—Same—To be Judged According to Danger Which Servant Might Reasonably Apprehend.** Where employee continues to work with intoxicated fellow servant, his contributory negligence is to be judged according to

danger he should reasonably apprehend from such incompetency, in view of particular kind and character of work.

**9.—Trial—Instructions—Assuming Fact in Issue—Not Prejudicial, in View of Other Instructions.** In action for injuries due to alleged negligence in employing incompetent fellow servant, instruction, even if assuming that fellow servant was addicted to use of intoxicants, **held** not prejudicial, in view of other instructions completely covering proposition as to what was necessary to charge defendant with notice of such addiction and detailing all necessary substantive facts on which plaintiff's recovery must be predicated.

**10—Appeal and Error—Appellate Practice—Defendant Elicting Evidence of Certain Nature First, May Not Complain of Admission of Similar Evidence in Plaintiff's Behalf.** In employee's action for injuries alleged to be due to incompetency of fellow servant, admission of plaintiff's evidence of drinking of intoxicants by other servants than one causing injury **held** not cause for complaint, where defendant first elicited such evidence.

**11.—Pleading—Amendments—Discretion of Court.** Allowance of amendments at trial is largely discretionary with trial court.

**12.—Same—Amendments—Allowance of Trial Amendment at Close of Evidence Held not Abuse of Discretion Under Circumstances.** Allowance, at close of all evidence in case, of trial amendment to petition, that by reason of injury sued for, plaintiff suffered blood poisoning and system became poisoned and weakened, **held** not abuse of discretion, in view of sections 1272-1274, Revised Statutes 1919, especially where defendant was given ample time to procure additional evidence to meet issues raised.

---

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 704, n. 78. Master and Servant, 39CJ, p. 533, n. 87; p. 535, n. 89, 94; p. 832, n. 5, 6; p. 1172, n. 94; p. 1194, n. 35; p. 1204, n. 76. Pleading, 31 Cyc, p. 393, n. 41; p. 399, n. 83; p. 401, n. 93. Trial, 38 Cyc, p. 1543, n. 67; p. 1653, n. 12; p. 1784, n. 85, 86.

Appeal from the Circuit Court of Greene County.—Hon. Warren L. White, Judge.

AFFIRMED.

*R. A. Pearson*, of Joplin, and *W. R. Self*, of Springfield, for appellant.

(1) Where the situation caused by the master's negligence and the danger thereof are as well known to the servant as the master, and according to the nature and character of it, the hazard is obvious and imminent, the servant cannot recover for resulting injuries. Myers v. Glass Co., 129 Mo. App. 556; Smith v. Railway, 151 Mo. 409; Thomas v. Cement Co., 245 S. W. 575, 211 Mo. App. 141; Maxwell v. Railway, 85 Mo. 95; White v. Lewiston, 87 N. Y. S. 90; Flynn v. Railway, 78 Mo. 203; Rube v. Mining Co., 209 S. W. 616; Van Bibber v. Swift, 228 S. W. 77; Hall v. Coal Co., 249 S. W. 444. (2) The drinking of intoxicating liquor by the servant is not negligence in itself; it must be shown to be excessive or such as to render him

incompetent before the master is chargeable with notice. 26 Cyc. 1301; Norfolk v. Railway, 47 Am. St. Rep. 392; Zumwalt v. Ry. Co., 35 Mo. App. 661; Allen v. Lumber Co., 171 Mo. App. 501; Wallin v. Ry. Co., 138 N. W. 270. (3) Where an instruction purporting to cover the entire case assumes a fact, alleged in the petition, necessary to be proved and to be found by the jury, it is reversible error, nor is it cured because such finding is required in other instructions. Kibler v. Ragland, 263 S. W. 511, (5), (6); Rutledge v. Swinney, 170 Mo. App. 265; Connell v. Co., 257 S. W. 772 (17); Wease Tool Co., 187 Mo. App. 716; Humphreys v. Railway, 178 S. W. 254; Walker v. White, 178 S. W. 233; Stumpf v. Railway, 227 S. W. 852; Jackson v. Black, 264 S. W. 443 (4, 5). (4) Other and disconnected acts of negligence are not competent to prove the negligence charged. 22 C. J. 744, sec. 835; Friedman v. Railway, 238 S. W. 1076 (8); Haycraft v. Grigsby, 88 Mo. App. 358; Land Co. v. Tie Co., 79 Mo App. 547; Coale v. Railway, 60 Mo. 227; Shoemaker v. Coal Co., 255 S. W. 352 (5); Schierbaum v. Schemme, 157 Mo. 22. (5) The court's discretion is limited to a prudent and legal exercise in accordance with the principles, analogies and spirit of the law; and plaintiff at the close of all the evidence may not be permitted to amend his petition to conform to the proofs, (a) where the amendment changes the claims and enhances the damages, (b) when the proofs are offered out of order as rebuttal, (c) where the testimony has been admitted over defendant's objection, (d) where plaintiff knew the facts for months before hand and had all that time in which to amend, (e) when he was fully advised for such time that defendant questioned the competency of the evidence under the original petition and knowingly chose to go to trial thereon, (f) and no excuse whatever is tendered for asking such amendment at such time. Christabel v. Craig, 80 Mo. 375; Feary jv. Railway, 162 Mo. 94; Flowers v. Smith, 214 Mo. 138; Laclede Land Co. v. Goodno, 181 S. W. 413 (5); Bank v. Brinkerhoff, 110 Mo. App. 437; 31 Cyc. 402, 373 and 452; Weed Sewing Machine Co. v. Philbrick, 70 Mo. 648; Little River Drainage v. Railroad, 236 Mo. 113; Carter v. Dilley, 167 Mo. 571; Laughlin v. Leigh, 226 Mo. 339; Delaney v. Delaney, 245 S. W. 1075; State v. Reynolds, 208 S. W. 620 (4); Joyce v. Growney, 154 Mo. 263; Arkla Lumber Co. v. Mfg. Co., 252 S. W. 967 (6, 7); Boyer v. Ry. Co., 199 Pac. 283; W. U. Co. v. Graham, 244 S. W. 585. (7); Johnson v. Sunshine Ice Co., 243 N. W. 455; N. W. Thresher Co. v. McNich, 140 Pac. 1171 (2); Policastro v. Sprague, 161 N. Y. S. 912.

*H. T. Lincoln*, and *C. H. Skinker, Jr.*, of Springfield, for respondent.

(1) Plaintiff was not guilty of contributory negligence as a matter of law. Williams v. Mo. Pac. Ry. Co., 109 Mo. 475, 18 S. W.

1098; Smith v. Little Pittsburg Coal Co., 75 Mo. App. 177; Brown v. Lumber Co., 202 Mo. App. 573, 209 S. W. 310; Hutchinson v. Richmond Safety Gate Co., 247 Mo. 71, 113, 152 S. W. 52; Bleisner v. Distilling Co., 174 Mo. App. 139, 157 S. W. 980; Dakan v. Mercantile Co., 197 Mo. 267; Sustar v. Bambrick Bro. Const. Co., 179 Mo. App. 495, 162 S. W. 730.   (2)   Plaintiff's instruction No. 1 did not assume that Wilkerson was addicted to the use of intoxicating liquor to such an extent as to render him incompetent.   The charge that if defendant knew Wilkerson was addicted to drinking, etc., is not an assumption that Wilkerson was so addicted and especially is this true where, as here, the jury had already been told in the preceding part of the instruction that they must find that Wilkerson was addicted to drinking, etc., before they could find for plaintiff. Ogan v. Mo. Pac. Ry., 126 S. W. 191, 193; Ludwig v. Cooperage Co., 156 Mo. App. 117, 129, 136 S. W. 749; Kaiser v. United Rys. Co., 155 Mo. App. 428, 438; McMillan v. Bausch, 234 S. W. 835; Beck v. Galloway-Pease Lumber Co., 239 S. W. 166; Liljegren v. Ry. Co., 227 S. W. 925; Leine v. Contracting Co., 134 Mo. App. 557, 564, 114 S. W. 1147.   (3)   Appellant cannot complain that evidence was admitted of excessive drinking on the job by employees other than Wilkerson where appellant is responsible for such testimony getting into the record.   Nitchman v. United Rys. 203 S. W. 491; Ry. Co. v. Plate, 92 Mo. 614, 634; Schaffer v. Mo. Pac. Ry. Co., 98 Mo. App. 445, 72 S. W. 154; Buffum v. Woolworth Co., 273 S. W. 180; Huston v. Mo. Pac. Ry. Co., 50 Mo. App. 300, 304; Birmingham Drainage Dist. v. Railway, 266 Mo. 60, 71, 178 S. W. 893.   (4)   The court did not err in permitting plaintiff to amend the damage clause of his petition by interlineation nor in overruling defendant's objections to evidence showing blood poisoning resulting from plaintiff's injury.   The statutes are liberal in this respect and if defendant felt that the original allegations of the petition were not broad enough to support this testimony or that there was a variance between the petition and the proof he should have filed the statutory affidavit of surprise showing in what respect he was prejudiced or misled.   R. S. 1919, Secs. 1272, 1273 and 1274; Turnbow v. Kansas City Rys. Co., 211 S. W. 41, 45; Bryant v. Kansas City Rys. Co., 217 S. W. 632, 634; Landers v. Railway Company, 114 Mo. App. 655, 90 S. W. 117.

BAILEY, J.—Plaintiff brought suit seeking damages for personal injuries received about October 25, 1923, while in the employ of defendant in constructing a state highway west of Springfield, Missouri.   The petition alleges that defendant had employed one Arch Wilkerson as a teamster and that plaintiff was likewise a teamster, both engaged in the work of constructing the road under the direction of defendant's foremen; that plaintiff was required to drive a lead team of three horses and thereby aid in pulling and

loading a wheel scraper to which was attached the team of horses which Wilkerson was required to drive; that plaintiff's team was attached to the scraper by means of a hook put through the end of the tongue on the scraper; that when the scraper was filled it was the duty of Wilkerson to stop his team, and give plaintiff an opportunity to detach the front team from the scraper by removing the chain and to move himself and team to a place of safety; that on or about October 25, 1923, while engaged in said work plaintiff was injured by reason of Wilkerson, who was at the time intoxicated, driving his team upon plaintiff while he was engaged in unfastening the chain of the lead team from the tongue of the scraper; that the facts which constitute negligence are as follows: "That after defendant had employed the said Arch Wilkerson, and for a long time prior to plaintiff's said injuries, the defendant knew, or by the exercise of ordinary care and caution should have known, that the said Arch Wilkerson was addicted to the use of intoxicating liquor to such an extent as to make him careless, reckless, incompetent and unsafe to work along with his other employees, including this plaintiff, and that notwithstanding this knowledge, the defendant carelessly and negligently retained the said Arch Wilkerson in his employment and negligently and carelessly permitted the said Arch Wilkerson to work along with his other employees, including this plaintiff.''

The answer was a general denial and a plea of contributory negligence. No facts were pleaded.

This cause was twice tried in circuit court before a jury, finally resulting in a verdict and judgment for plaintiff in the sum of $2500, from which judgment, defendant has appealed.

Defendant first assigns as error the refusal of the trial court to sustain his instruction in the nature of a demurrer to the evidence, offered at the close of all the evidence. The evidence most favorable to plaintiff, which for the purpose of this demurrer must be taken as true, developed a state of facts substantially as follows: Plaintiff was a man about 38 years of age and a widower with two children. In the fall of 1923, he was working for defendant as a teamster in building a part of state highway No. 14, West of Springfield, which defendant had under contract. At the time of the accident, plaintiff was engaged in "hooking wheelers" in the manner described in his petition heretofore noted. The wheel scraper was constructed with a lever to raise and lower the pan. In loading the pan it was lowered and when full it was raised in order to carry off the load without scraping the ground. The loading was accomplished by the use of five horses, two of which were attached directly to the scraper, one on each side of the tongue, while the other three, being the lead team, were only used with the scraper while it was in the

process of being loaded. Two men worked on the scraper, one operating the lever and one driving the rear team. After the scraper had its load the horses would be stopped on signal from the men operating the scraper and plaintiff would thereupon step in front of the rear team and behind his lead team for the purpose of unhooking his team from the tongue of the scraper. As to the manner in which the accident happened, plaintiff testified as follows: "At the time I was injured the man back of the team had yelled to stop. The team stopped, my team stopped too. I stepped in to take off the hook. Mr. Wilkerson then just slapped his horses and went yelling on out. He said 'Get up,' I was at the tongue at the time.

"By Juror:

"He has told me several times to get out of the way, he never told me this time.'

"By Mr. Skinker:

"When the team started they stepped on my right foot. The right-hand horse on the south side caught my toe. My hand came out from the tongue, caught this thumb against the hame. I threw my hands up, thumb struck the hame, mashed and bruised thumb. Mr. Stephens came by and I told him about it and I went and took off my shoe. It just tore my big nail loose. I went and took my shoe off and set the nail back."

In relation to the condition of Wilkerson, plaintiff testified as follows:

"Q. State to the jury his conduct at that time, what he was doing, what he would say, manner he would say it, in a general way what his conduct was? A. Well, the worst thing was hollering, frothing at the mouth, loud boisterous way, staggering.

"Q. Frothing, sort of foam around his lips? A. Yes, sir.

"Q. How was his face as to flushed or not? A. Red as a beet.

"By Mr. Pearson: We object as leading. Objection sustained." Plaintiff excepted.

"By a Juror: Q. Did you see him drinking or smell the whiskey? A. Didn't exactly see him. He went into an old house there. I didn't go over. He would make trips over there and back where it was. I didn't see him turn it to his head. Yes, I could smell it."

Witness continuing:

"I smelt his breath that morning. Smelled like corn whiskey.

"Q. Had you smelled corn whiskey on his breath other days on the job? A. I hadn't before. I had seen him go to the little house, a shanty there along the road with these foreman, Stephens and Powell. They would stay there probably five, six or seven minutes. Usually came out wiping their mouth, laughing all in a big way. Have smelled liquor on breath of these foremen when they came out there.

"Q. And Wilkerson when he would come out there with them? A. Yes, sir. It happened all the time I was there, every day, around a dozen times a day.

"By Juror: Q. Did you know there was corn whiskey in that little house? A. No, sir, only by smell. The conduct of Stephens and Powell was on these occasions they would act the same way Wilkerson did. Get a saddle and ride up and down the road. Wilkerson would run his horses and holler, stop and talk to men on the job, go on a little further and stop and talk to another bunch. I smelt Wilkerson's breath that morning the morning I was injured. From the smell of his breath and his conduct that morning I would state that Wilkerson was in an intoxicated condition at the time of this accident."

On cross-examination plaintiff testified that "Yes, the horse stepped on my foot, the horse on the right going East. I was unhooking from the right side, we were on the south side going east, the right horse stepped on my foot. I hollered at Wilkerson. When the horse stepped on my foot they were coming straight ahead. He should have turned to the left out of the way after I had unhooked but he didn't. The horse didn't take over one or two steps, he just jumped upon onto me. Yes, he had them all fretted and nervous. The horse lunged upon me and stepped on me with the right foot. He stepped on off. They didn't run over me, in the scramble I got out of the way. No, they couldn't get very far if I hadn't unhooked. When he stepped on my foot I scrambled out of the way. They had been stopped but he didn't let them stand. Instead of turning out his team they came on over my single tree. As soon as he stepped on my foot I naturally grasped for life to get loose. In coming out I struck the harness, I struck the hame with this hand."

There was further evidence tending to prove that Will Powell and Will Stephens were foremen on the job and that Powell, Stephens and Wilkerson were drinking together while engaged in the work and that they had been guilty of such conduct for some days prior to the time of the accident complained of and that it was pretty common occurrence to observe Wilkerson under the influence of liquor.

The witness, Kieth, testified that there was a little shanty near where the work was being done, and that Powell and Stephens were foremen on the job. He further testified as follows: "I have seen Wilkerson or Powell or Stephens go up there, and come out. Had occasion to smell their breath after they had come out. Had occasion to observe the conduct of Wilkerson, Stephens and Powell after they had come out with reference to the way they would act. Whenever he would come out he was hollowing or going on at somebody, swearing or something like that. He wouldn't do that before he went to the

old house; he would do that as soon as he came out. On occasions all three had been in the house and came out. From the smell of their breath and their conduct they were intoxicated or had liquor on their breath acting under the influence.''

In order to make a case against defendant based on negligence in hiring and continuing to employ an incompetent and careless fellow servant it was incumbent on plaintiff to prove that the negligence of the servant who caused the injury was habitual; that such habitual negligence was the proximate cause of the injury; that the master knew, or by the exercise of ordinary care should have known, of such incompetency; and that with such knowledge, either actual or constructive, the master negligently retained the servant in his employ. [Allen v. Lumber Co., 171 Mo. App. 500, 157 S. W. 661. 16 R. C. L. 720.]  Knowledge of foreman was the knowledge of the master. [Smith v. St. L. & San F. Ry. Co., 151 Mo. l. c. 409.]

Defendant in this case does not seriously contend that under the evidence, plaintiff failed to make a case for the jury under the rule stated in the Allen case, but does contend that plaintiff was guilty of such contributory negligence as to bar him from recovery as a matter of law. This contention is based on plaintiff's testimony on cross-examination, which was as follows: ''I saw Wilkerson go up there the morning I was hurt, up there three or four times I guess, before 9:30.

''Q.   By the time 9:30 arrived he was what you would call drunk? A.   Yes, sir.

''Q.   And you knew he was drunk, you could see? A.   I could see it.

''Q.   He was frothing at the mouth? A.   Yes, sir.

''Q.   He was yelling and whooping? A.   Yes, sir.

''Q.   .Slapping his horses? A.   Yes, sir.

''Q.   Had them frightened, did he? A.   Yes, sir.

''Q.   Fretted and worried from his rough treatment? A.   Yes, sir.

''Q.   His conduct was boisterous? A.   Yes, sir.

''Q.   He was what you call slobbering drunk? A.   No.

''Q.   You say he was frothing at the mouth? A.   Yes.

''Q.   That was from liquor? A.   Looked like it.

''Q.   You could smell it from where you were? A.   Yes, sir.

''Q.   He was around the scraper? A.   Behind the scraper.

''Q.   You were ahead with the team? A.   Yes, sir.

''Q.   Now, he had been getting worse and worse up to 9:30 hadn't he? A.   He stayed about the same.

''Q.   He had drunk like this all morning? A.   Yes.

''Q.   Did he stagger any? A.   In his walk he would stagger, you couldn't tell whether he was exactly staggering from that or not.

"Q. He couldn't walk straight? A. No.

"Q. You mean to tell this jury that you were working there with a man that from drunkenness was frothing at the mouth, couldn't walk straight, slapping his horses, having them fretted and worried, yelling and hollowing and you continued working there? A. Yes, sir.

"Q. You knew those conditions? A. Yes, sir.

"Q. Why didn't you make some complaint to the foreman about that kind of a man on the job, you knew it was dangerous, didn't you? A. Yes, sir.

By Mr. Lincoln: "We suggest that you let him answer the first question.

"A. I did, I told Mr. Stephens. I told him to stay around there."

There was evidence that, although Wilkerson had been drinking on the job for some time prior to the accident, no one had been injured thereby. There was also evidence that very often the hook would drop from the tongue without the aid of plaintiff and that the work of unhooking never required more than a moment of time.

Appellant cites a number of cases in support of this proposition which we have carefully read, but do not find they uphold his contention that his demurrer to the evidence should have been sustained. We shall mention a few of these cases. Meyers v. Glass Co., 129 Mo. App. 556, 107 S. W. 1041, went off largely on the point that the servant adopted an unsafe method of doing the work. In Thomas v. Atlas Portland Cement Co., 245 S. W. 575, plaintiff's eye was put out by a flying bolt; prior to that, on the same day, he had two teeth knocked out by a flying bolt. The work was inherently dangerous. He had full knowledge of the danger and continued to work in the same manner even after the ominous warning impressed by the loss of two teeth. He was held to be barred. In Maxwell v. Ry. Co., 85 Mo. 95, defendant was held liable where its employee was injured by the act of another servant due to the latter's intoxication and the defendant knew, but plaintiff did not, of the intemperate habits of said employee. The case of Smith v. Railway, 151 Mo. l. c. 409, was decided against plaintiff because he failed to establish knowledge on the part of defendant of the servants incompetency or authority for doing the work which he did. In Kube v. Coal Co., 209 S. W. 614, the servant was injured by the breaking of a prop in a mine, which prop he had, himself, selected from a pile and placed under the roof. He was barred from recovering.

The rule is that mere knowledge on the part of plaintiff that his co-employee is incompetent will not defeat his right to recover. In a case somewhat similar to the one at bar the law laid down in an old Missouri case is thus stated: "The duty of the plaintiff under such circumstances is not to be determined by the single fact of his

knowledge of the danger he incurred by continuing to serve with a co-employee, known by him to be an unfit and incompetent person. It was enough for the court to say, as it did, that a failure on the part of plaintiff to refuse to work, in view of that knowledge on his part, might be negligence on his part. The qualification was incorrect, that it was for the jury to say from all the attending circumstances whether his failure to do so was, in fact, contributory negligence.'' [Williams v. The Missouri Pac. Ry. Co., 109 Mo. 1. c. 487, 18 S. W. 1098.]

It is a well-recognized rule of law that ''Where the evidence of plaintiff's contributory negligence is such that reasonable minds might reach different conclusions then it becomes a question of fact.'' [Calhoon v. D. C. & E. Mining Co., 209 S. W. 1. c. 319, 202 Mo. App. 564.]

In a case in which the rule requiring the master to exercise ordinary care to furnish a reasonably safe place in which to work was invoked the court held that: ''Where, as in this case, the defense is a plea of contributory negligence, the servant's knowledge of its unsafe condition may be shown in evidence, but such knowledge precludes a recovery only where the danger is so obvious that a man of ordinary prudence would, under the circumstances, refuse to do the master's bidding; and the question of whether the danger was so obvious and imminent as to make is contributory negligence for the servant to continue in his master's service is a question for the jury.''[Burkard v. Rope Co., 217 Mo. 1. c. 481, 117 S. W. 35.]

''It cannot be said that the servant and master are on an equal footing, even where they have equal knowledge of the danger.'' [Stephens v. Ry. Co., 96 Mo. 1. c. 212, 9 S. W. 589.] ''Mere knowledge of the defect will not defeat a recovery. Negligence on the part of the servant, in such case, does not necessarily arise from his knowledge of the defect, but it is a question of fact to be determined by the jury from such knowledge and the other circumstances in evidence.'' [Smith v. Coal Co., 75 Mo. App. 1. c. 182.]

The same general rules of law relative to the duty of the master to exercise ordinary care to furnish reasonably safe tools and appliances and a reasonably safe place in which to work are applicable as to his duty to employ competent servants to do the work. [18 R. C. L. 721; Haviland v. R. R. Co., 172 Mo. 106, 72 S. W. 515.] It is also sound law that ''The degree of care required of the master in seeing that none but competent and suitable servants are retained must depend somewhat upon the danger to be apprehended from retaining unfit servants in the particular business. Thus, more care is required in selecting and retaining engineers than in selecting and retaining firemen, brakemen or track repairers.'' [Williams v. Ry. Co. supra, 1. c. 484.]

It follows as a corollary to this proposition, that in considering the question of a servant's contributory negligence, his conduct in continuing to work with a fellow servant whom he knows to be incompetent, is to be judged according to the danger he should reasonably apprehend would result from such incompetency in view of the particular kind or character of work in which the servants may be engaged. For instance, a servant would be expected to apprehend greater danger in constructing a paved road, when working in front of a cement mixing machine carrying on the end of its boom a heavy load of cement, if it were operated by an incompetent engineer, than he would be if the incompetent servant with whom he had to work was simply a teamster whose work required no great degree of skill or care.

Applying the rules of law above set forth to the facts of this case, we are unable to declare as a matter of law that plaintiff was guilty of such contributory negligence as to bar his recovery. He had worked with Wilkerson several weeks under practically the same conditions. No one had been injured by Wilkerson's conduct. The work was of the simplest character. The times when plaintiff was in any danger at all were only for brief moments. We believe reasonable men might differ in deciding whether plaintiff should have refused to work under such conditions. It was therefore, a question for the jury and the trial court, we think, ruled correctly in submitting the proposition.

Defendant complains of the action of the trial court in giving plaintiff's instruction No. 1. That part of the instruction to which our attention is directed reads as follows:

"That after defendant had employed said Wilkerson and for a long time prior to plaintiff's said injuries, the defendant knew, or by the exercise of ordinary care and caution would have known *that said Arch Wilkerson was addicted to the use of intoxicating liquor,* (italics ours) to such an extent as to make him careless, reckless, incompetent and unsafe to work along with defendant's other employees, including this plaintiff, and that notwithstanding this knowledge, if you find defendant did have such knowledge, the defendant, Dr. V. E. Koch, carelessly and negligently retained the said Wilkerson in his employment and carelessly and negligently permitted said Wilkerson to work along with defendant's other employees, including plaintiff, and thereby caused plaintiff's said injuries, as aforesaid, then your verdict must be for the plaintiff."

It is contended this instruction (a) assumes that Arch Wilkerson was addicted to the use of intoxicating liquor, (b) and that there was insufficient evidence to submit the question of Wilkerson's incompetency or defendant's knowledge of such a fact. (a) As to the first contention, in the case of McMullin v. Bausch, 234 S. W. 835, a somewhat similar instruction was held not to assume the fact

to be proven on the theory that the one fact could not be found to exist without the jury first finding the existence of the other. We do not understand the rule as there stated, of general application. At any rate, it is unnecessary to resort to such rule in this case. Instruction No. 4, given for plaintiff fully covered the proposition as to what was necessary to put defendant on inquiry and charge him with notice as to Wilkerson's addiction to the use of intoxicating liquor. Instruction No. 7, given for defendant, likewise, detailed every substantive fact necessary to be found before the jury could find for plaintiff and among other things required the jury to first find that Wilkerson was addicted to the use of intoxicating liquor to such an extent as to render him unfit or incompetent "and that defendant knew or by the exercise of ordinary care might have known of such incompetency from such liquor addictions." We believe that under these instructions the jury could not possibly have been misled and that the question of Wilkerson's addiction to the use of intoxicating liquor was fairly presented to the jury. (b) We have set out most of the testimony relative to Wilkerson's incompetency. That evidence indicates he drank frequently with defendant's foreman and that he was boisterous and careless while at work and on occasions prior to the time of the accident. Without further comment we rule against defendant on his second point relative to this instruction.

Error is assigned because the court admitted evidence on behalf of plaintiff of the drinking of intoxicating liquor by other servants at other times in no wise connected with the negligence charged. Such character of evidence was first brought out by defendant's counsel when he asked plaintiff if he knew of an instance or two where defendant put a man off the job for drinking. Continually throughout the trial defendant's able counsel elicited such testimony from witnesses and we are of the opinion defendant has no right to complain on that score.

Defendant further assigns as error the action of the trial court in permitting plaintiff to amend his petition at the close of all the evidence in the case. The amendment permitted was as follows: "That by reason of said injury to the thumb of his right hand, blood poisoning set in and said thumb, hand and arm became greatly swollen and sore, and his system became poisoned and weakened." The record shows the court made the statement at the time that "this cause was tried in this court in the May Term thereof, 1924, that in said trial evidence was offered on behalf of plaintiff and admitted by the court to the effect that the plaintiff had suffered blood poisoning as the result of the injury herein complained of; that said evidence was admitted by the court over the objection and exception of the defendant, who at the time made the same objection to the admission

of such testimony as has been made by him at this trial. This admission is made only for the purpose of determining the plaintiff's motion for leave to amend.'' Defendant then moved to strike out all the testimony in the case relating to blood poisoning of the plaintiff's thumb or complications thereof and not within the scope of the petition. The trial court thereupon sustained plaintiff's motion to amend the petition as above set forth and overruled defendant's motion to strike out the evidence. The court further stated: ''Defendant will be given reasonable time to procure and introduce expert testimony on this subject in this trial if he cares to do so.'' Defendant's counsel ably and eloquently argues this point, citing a number of authorities in support of his contention. Most of these cases deal with a situation in which the court refused to permit amendments or had to do with offers of evidence out of order. Such matters have always been left largely to the discretion of the trial court. Had the court refused to permit the amendment in this case, we believe the discretion would not have been subject to criticism. Having ruled the other way and given defendant leave to furnish further evidence on the point, we do not believe the case should be reversed for such cause. The statutes of Missouri have given the trial court wide powers in this regard and permit amendments any time before final judgment, in the interest of justice. [R. S. 1919, secs. 1272, 1273, 1274.]

So far as this record shows, defendant was given ample time to procure additional evidence to meet the issue raised and the cases hold that under such circumstances there was no abuse of discretion. [Turnbow v. Kansas City Rys. Co., 211 S. W. l. c. 45, 277 Mo. 644.]

What has been said disposes of all the errors assigned. The judgment should accordingly be affirmed. It is so ordered.

*Cox, P. J.,* and *Bradley, J.* concur.