**John Carl FRALEY, Plaintiff,**

v.

**Don WORTHINGTON, Defendant.**

**No. C74–68.**

United States District Court,
D. Wyoming.

Nov. 27, 1974.

See also D.C., 64 F.R.D. 726.

J. F. Mahoney, Casper, Wyo., for plaintiff.

Richard E. Day and Frank D. Neville of Wehrli & Williams, Casper, Wyo., for defendant.

## MEMORANDUM OPINION

KERR, District Judge.

The question for decision in this matter is whether the defendant as a tool pusher, i. e., general foreman for the employer, owed the plaintiff a duty to provide a safe place to work and whether, by his negligence, if any, the defendant breached that duty? Defendant has filed a motion for summary judgment supported by affidavits asserting that no genuine issue as to any material fact exists. Plaintiff has filed counter-affidavits in opposition to the motion.

The use of summary judgment to achieve expeditious disposition of cases is a cardinal virtue but it should be temperately and cautiously used lest overuse reap nullification. See Broderick Wood Products Co. v. United States, 195 F.2d 433 (10th Cir. 1952); Giordano v. Lee, 434 F.2d 1227 (8th Cir. 1971). "The purpose of summary judgment proceedings is to determine whether there is any genuine triable issue of fact which must be passed upon. The right of the moving party to summary judgment must be free from doubt." Carruthers v. B. C. Christopher & Co., 13 Ill.App.3d 108, 300 N.E.2d 1, 6 (1973). "If there is to be error at the trial level it should be in denying summary judgment and in favor of a full live trial." 6 Moore's Federal Practice § 56.15 [1–2]. Even though there may be considerable doubt as to the existence of a claim or defense, if it appears to be in good faith the party asserting it is entitled to a trial and an opportunity to examine the case or defense of his adversary in the usual course. See Arnstein v. Porter, 154 F.2d 464 (2nd Cir. 1946). The great preponderance of the cases thus make clear that a movant seeking summary judgment bears a heavy burden to dispel any doubt as to his entitlement thereto. Both parties have submitted well-framed, knowledgeable briefs in support of their respective positions.

Plaintiff alleges that he was injured while performing duties in the course

of his employment and that at the time of the accident defendant was the principal supervisor on the rotary drilling rig. Plaintiff further alleges that defendant had a duty to provide and maintain a safe place to work and that he was negligent in (1) permitting on the rig a make-up chain of undue length, (2) failing to install a protective panel, and (3) failing to provide a receiver to control the make-up chain. Defendant, as gleaned from the material on file herein, denies any negligence on his part or that he had a duty to provide or maintain a safe place to work. It is not clear how long defendant had been on the rig as the tool pusher as he has alleged in his answer he had been on the rig for three days and in his affidavit, in support of the motion for summary judgment, he alleges that he had been on the drilling rig only one day prior to the accident.

Section 27–54, Wyo.Stat. (Cum.Supp. 1973) provides in part:

"Where an employee coming under the provisions of this act receives an injury under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee if engaged in extra-hazardous work for his employer at the time of the injury, shall not be deprived of any compensation which he would otherwise receive under this act. He may also pursue his remedy at law against such third person . . . ."

There does not appear to be any dispute that both the plaintiff and defendant were employed by True Drilling Company and that True Drilling Company contributed to the Workmen's Compensation Fund. As specified by Section 27–50, Wyo.Stat. (1957), plaintiff has received benefits from that fund in lieu of any right of action that he might have against his employer.

The Wyoming Supreme Court, in Markle v. Williamson, 518 P.2d 621 (Wyo.Sup.Ct.1974) dispelled any prior doubts, see In re Byrne, 53 Wyo. 519, 86 P.2d 1095 (1939), by holding generally that an employee was "some person other than the employer" and was therefore liable to suit by a fellow employee. The Markle decision has created the basis in general for this action and undoubtedly for many similar actions. Thus, that opinion deserves careful study and extensive review of the discussion of the court. In so holding, the Wyoming Supreme Court joined the clear and growing majority of the states who have limited the reach of their workmen's compensation acts to the explicit language of the statutes. See 21 A.L.R.3d § 3(a), pgs. 850–852; 2 Larson, Workmen's Compensation § 72 et seq.

In commencing its review, in Markle, supra, the Wyoming Supreme Court stated:

"There is a pervading rule that valuable common law rights shall not be deemed destroyed by a statute except by clear language . . . The general rule seems to be that where there is no expressed legislative mandate to the contrary, a co-employee or fellow servant is a third party tortfeasor within the meaning of a workmen's compensation act like ours." 518 P.2d at 623.

The court declared there is a prima facie right to compensation when disability or death is the result of an injury sustained in the course of employment, unless the disability is due solely to the negligence of the workman making the claim. See Hotelling v. Fargo-Western Oil Co., 33 Wyo. 240, 238 P. 542, 544 (1925). The supreme court was wary of being influenced by other statutes and thus looked to the clear language of our state statute. In so doing the supreme court reiterated a view expressed previously by this Court, see American Surety Company v. Pittsburgh-Des Moines Steel Company, 238 F.Supp. 850 (10th Cir. 1965), that the workmen's compensation act relates only to the rights and obligations of the em-

ployer to its employees and vice versa. Said the court:

"If exclusive remedy coverage has been extended only between the contributing employer and the injured . . . employee, it is difficult to argue that the workmen's compensation law affords an exclusive remedy for a workman injured by the negligent act of a fellow employee." 518 P.2d at 625.

The issues now before this Court go one step beyond Markle v. Williamson, in a sense, in that defendant claims the duty to provide a safe place to work is a non-delegable duty of the common employer, for which any breach thereof defendant is not liable, absent any proof of personal negligence on the part of defendant.

The general rule was well stated in Engen v. Rambler Copper and Platinum Company, 20 Wyo. 95, 126, 121 P. 867, 874, 123 P. 413 (1911), where the Wyoming Supreme Court said:

"[I]t is generally held that it is the master's duty for the protection of his employees to exercise such care and skill in the following particulars, among others: (1) To furnish them with reasonably safe machinery, appliances, tools, and place to work, and to keep the same in reasonably safe repair."

This duty of providing a safe place to work requires reasonable inspection and tests. In this respect, the contradiction and ambiguity, above, as to the length of time defendant was on the rig prior to the accident is crucial, as the same may be used to show actual or constructive notice of any defects in the machinery or the premises. By prior order in this matter, this Court has held that the defendant was not a fellow servant as such, but rather occupied the position of agent and that if defendant, who was entrusted with supervisory duties by the employer, failed to perform the duties of the master to provide and maintain a safe place to work, he then stood in the position of vice principal and was

jointly liable with the employer. See Engen v. Rambler Copper and Platinum Company, at 127, 121 P. 867, 123 P. 413, above. This view has been stated elsewhere:

"An agent who, by promise or otherwise, undertakes to act for his principal under such circumstances that some action is necessary for the protection of the person or tangible things of another, is subject to liability to the other for physical harm to him or his things caused by the reliance of the principal or of the other upon his undertaking and his subsequent unexcused failure to act, if such failure creates an unreasonable risk of harm to him and the agent should so realize."

See 2 Restatement of Agency 2d, § 354 (1958). This is in accord with the realities of modern industry where many of the duties of the "master" are in fact delegated to subordinate supervisory personnel.

In a similar case, the contention was made, as it is here, that any acts of negligence—that of failing to provide a safe place to work and failing to maintain the crane in good order—were acts of nonfeasance, rather than misfeasance, for which they, as supervisory employees, were not liable. In rejecting this viewpoint, the Alaska Supreme Court declared in Ransom v. Haner, 362 P.2d 282, 288 (Alaska Sup.Ct.1961):

"Once the defendants . . . actually undertook and entered upon the execution of their supervisory and operational duties at the plant, . . . it became their duty to exercise reasonable care in the manner of execution so as not to cause any injury to the plaintiff. If they failed to provide a safe place to work for the plaintiff or failed to furnish him with safe and proper equipment for his work, they cannot exempt themselves from liability to him for their negligence. The plaintiff was entitled to rely upon the expectation that Haner and Keyes, as supervisory employees, would ful-

fill the master's responsibility of furnishing him, the plaintiff, with a safe place in which to work and with safe and proper equipment for doing his work. Accordingly, it was error for the lower court to hold that the alleged negligent acts of the defendants, even if true, amounted to nonfeasance only, for which a supervisory employee is not liable to an injured employee."

 As a vice-principal, the defendant had a duty to perform those duties entrusted to him by the employer. As a supervisor, those duties included the requirement of performing such reasonable inspection and taking such preventive steps as would be necessary and reasonable under the circumstances. The workmen's compensation acts have taken the place of any right of action an employee may have against his employer, but as stated in Markle v. Williamson, 518 P.2d 621, 623, above, "Having said the employer shall be immune, the legislature surely would have used similar language to say co-employees were immune—if it had so intended." The various workmen's compensation acts have not abrogated previously existent rights against a negligent third party, other than an employer. And in reality, Markle was not treading into a new and murky area but rather was a reiteration only of certain common law rights not affected by the workmen's compensation act.

■■ Thus, this suit is but a logical extension and result of the Markle decision which this court is obliged to follow. The defendant may be held liable for any personal negligence on his part, either by way of nonfeasance or misfeasance after having entered upon the execution of his supervisory duties. The defendant had the duty of fulfilling the master's, or vice-principal's, duty of providing and maintaining a safe place to work. This is not to say that defendant may not avail himself of any other defenses, such as whether plaintiff knew of the attendant perils and continued

without protest or whether plaintiff in fact assumed any ordinary risks existing after the vice-principals had done everything they were bound to do. See Boatman v. Miles, 27 Wyo. 481, 199 P. 933 (1921). The essence of this opinion is found and is premised upon a fundamental theory of tort law, i. e., that one should pay for the harm which he causes others when he is at fault.

■ Although this opinion has ranged far beyond what would ordinarily be the scope for ruling on a motion for summary judgment, it has been necessitated by the need to advise counsel as to their respective burdens if and when this matter should proceed to trial. Issues of negligence, in summation, are ordinarily not susceptible of summary judgment and this matter is a classic example of where such a procedure would not be proper.

The motion for summary judgment will be overruled and an order entered accordingly.