Narcisco ABEYTA, Appellant
(Plaintiff below),

v.

Robert HENSLEY, Appellee
(Defendant below).

No. 4908.

Supreme Court of Wyoming.

May 16, 1979.

Rehearing Denied June 19, 1979.

Peter H. Murphy, Plano, Tex., for appellant.

William S. Bon and Cameron S. Walker, of Schwartz, Bon & McCrary, Casper, for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS, and ROSE, JJ., and GUTHRIE, J., Retired *.

THOMAS, Justice.

The appellant, Narcisco Abeyta, brought this action seeking to recover damages for personal injuries which he sustained while working in the course of his employment as a tire repairman. The appellee, Robert Hensley, was the president and general manager of the tire repair firm where Abeyta was employed. It was Abeyta's theory that he could proceed against Hensley as a negligent co-employee. Abeyta claimed that Hensley was negligent in two respects: First, because Hensley failed in his duty to furnish Abeyta with a safe place to work; and second, because Hensley employed a young man who was incompetent to perform the duties assigned to him and whose negligence was asserted to have caused Abeyta's injuries. At the close of all the evidence the district court directed a verdict in favor of Hensley on the ground that there was no negligence shown on his part. We shall affirm the judgment of the district court.

■ We have examined the evidence in accordance with the standard set forth in *Barnes v. Fernandez*, Wyo., 526 P.2d 983, 985 (1974):

> "In determining the question of whether a verdict should have been directed, under Rule 50(a), W.R.C.P., we must consider the evidence favorable to the party against whom the motion is directed, giving to it all reasonable inferences. *  *"

We also are mindful of the further teaching of that case that the question of the sufficiency of the evidence to create an issue of fact for the jury is solely a question of law, and we give no deference to the view of the trial court. We apply the test there adopted, i. e.:

"*  *  * 'whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.' *Simblest v. Maynard*, C.A.2d, 1970, 427 F.2d 1, 4."

On May 2, 1975, a customer of the tire repair firm brought a flat tire in to be repaired. That night Randy, the fellow servant whom Abeyta alleges to have been incompetent, dismounted, repaired and remounted the tire. Randy was a teenager who frequently worked evenings after attending school during the day. He had worked with Abeyta throughout Abeyta's employment at the tire repair firm which had begun in August of 1974, approximately nine months earlier. Randy testified that after he had repaired the tire he placed 35 to 40 pounds of air pressure in it, made a notation on the outside of the tire that it had been repaired, and leaned it against another tire in the service area.

On May 3, 1975, the customer returned to pick up the tire, and Abeyta, after observing that it had been repaired, proceeded to inflate it to a higher pressure. He rolled the tire to an area close to an air hose and laid it flat on the floor with the valve stem pointed upward. Abeyta hooked up an air hose and tapped around the lock ring on the rim with a hammer to assure himself it was not dangerous. Abeyta then determined that no air was coming out of the hose, and he went to the basement of the building to check the air pressure gauges. The gauges indicated that the air pressure in the system at that time was 180 pounds per square inch. Abeyta went back to the tire and re-connected the tire to the air hose and checked the air pressure in the tire twice. On each occasion the air pressure in the tire ranged only from 40 to 45 pounds per square inch.

* At the time of oral argument, Guthrie, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court, entered on January 1, 1979, he has been retained in active judicial service pursuant to § 5, Art. 5, Wyoming Constitution, and § 5–1–106(f), W.S.1977, and has continued to participate in the decision and opinion of the court in this case.

After he had checked the tire a second time, Abeyta walked about ten feet away to a workbench where he remained for several minutes. He then heard a squeaking noise from the tire, and he ran back to it and reached across the tire to unhook the hose from the valve. At that instant the tire exploded, separating from the rim. From the force of the explosion the tire first struck and injured Abeyta, and then the tire flew approximately twenty feet straight up where it dented the metal roof of the building, leaving a noticeable mark on the ceiling. Abeyta's right arm was fractured in several places, resulting in serious and permanent injuries.

Abeyta in part describes the issues before the district court as:

"1. Whether Defendant, supervisor of Plaintiff, failed to exercise reasonable care to furnish Plaintiff with reasonably safe equipment to work.

"2. Whether Defendant, supervisor of Plaintiff, failed to exercise reasonable care to employ competent employees with whom Plaintiff was to work."[1]

Abeyta contends that the district court should not have granted Hensley's motion for a directed verdict because there was evidence to take the case to the jury on the two grounds of asserted negligence. Although he failed to cite it in his brief, we assume that Abeyta relies upon our case of *Markle v. Williamson*, Wyo., 518 P.2d 621 (1974), in pursuing recovery against Hensley as a negligent co-employee.

In defending this appeal, as an alternative basis for affirming the trial court, Hensley argues that he owed no duty to furnish Abeyta with safe equipment or to employ competent employees because that duty rested with their common employer, citing such cases as *Banks v. Liverman*, 129 F.Supp. 743 (D.C.Va.1955); *Whittle v. Atlas Powder Co.*, 34 F.Supp. 563 (D.C.Tenn. 1940); *Kerrigan v. Errett*, Iowa, 256 N.W.2d 394 (1977); *Dawley v. Thisius*, 304 Minn. 453, 231 N.W.2d 555 (1975); *Wilson v. Hasvold*, 86 S.D. 286, 194 N.W.2d 251 (1972); *Garchek v. Norton Co.*, 67 Wis.2d 125, 226 N.W.2d 432 (1975); *Kruse v. Schieve*, 61 Wis.2d 421, 213 N.W.2d 64 (1973); and *Wasley v. Kosmatka*, 50 Wis.2d 738, 184 N.W.2d 821 (1971). Hensley contends that the duty is solely that of the master, and that an officer or manager or supervisor has no duty to provide a safe place to work. Hensley recognizes that the United States District Court for the District of Wyoming in *Fraley v. Worthington*, 385 F.Supp. 605 (D.C.Wyo.1974), has held to the contrary, but he seeks to distinguish that case.

■ The nondelegable duty of a master or employer to provide an employee with safe working conditions, including competent co-employees, has been established in Wyoming for a long time.[2] The liability, under *Markle v. Williamson*, supra, of a supervising or managing co-employee for negligence on his part in failing to provide an injured employee with a safe place to work is a novel question in this court. We do note that our discussion in this regard is of limited viability. As of July 1, 1975, a co-employee, like his employer, is protected from action by his fellow employee if he is acting within the scope of his employment unless he is grossly negligent.[3] As of May 27, 1977, the exception was changed to permit action only against employees who are culpably negligent acting within the scope

---

1. Abeyta also recites as issues in the district court whether Hensley's negligence in the two respects quoted concurrently with the negligence of a fellow servant caused his injuries; whether Hensley's observance of industry safety standards precludes liability; and whether Hensley's general compliance with "OSHA" standards forecloses recovery. Because of our disposition of the quoted issues no discussion of those additional matters is necessary or appropriate.

2. *McBride v. Union Pacific Ry. Co.*, 3 Wyo. 247, 21 P. 687 (1889); *Engen v. Rambler Copper & Platinum Co.*, 20 Wyo. 95, 121 P. 867 (1912); *Mellor v. Ten Sleep Cattle Co.*, Wyo., 550 P.2d 500 (1976).

3. Ch. 149, S.L. of Wyoming 1975, § 1, p. 225.

of their employment.[4] Consequently a managing or supervising co-employee would no longer be subject to suit unless these respective statutory conditions were met.

In 2 Restatement of the Law Second, Agency 2d, § 354, p. 125 (A.L.I.1958), the rule is stated as follows:

"An agent who, by promise or otherwise, undertakes to act for his principal under such circumstances that some action is necessary for the protection of the person or tangible things of another, is subject to liability to the other for physical harm to him or to his things caused by the reliance of the principal or of the other upon his undertaking and his subsequent unexcused failure to act, if such failure creates an unreasonable risk of harm to him and the agent should so realize."

It would appear from the reporter's notes found in 2 Restatement of the Law Second, Agency 2d, Appendix, p. 587 (A.L.I.1958), that prior to the promulgation of this rule there was a substantial number of cases which had reached a contrary result, and as some of the cases cited by Hensley indicate, the rule has not been universally espoused since 1958. A perusal of the decided cases discloses that practically all courts found it important to be apprised by evidence of the actual circumstances surrounding the arrangement between the agent or employee and the master, and the actual circumstances of injury to a co-employee in arriving at their respective definitions of duty. In this instance, while there is no specific evidence on the question, Hensley is the only individual who could have acted on behalf of the corporate employer in furnishing Abeyta with a safe place to work. Consequently we would adopt the rule set forth in § 354, 2 Restatement of the Law Second, Agency 2d, for this purpose in Wyoming, again noting its limited efficacy, and also noting that even under the theory espoused by some of the courts upon which Hensley relies, Hensley's conduct in this situation may have been sufficiently affirmative and active to create a duty in those jurisdictions.

Turning to the basis for the action of the trial court in directing a verdict in favor of Hensley, we note that assuming a duty on the part of Hensley to provide reasonably safe equipment, Abeyta would not be entitled to recover unless he could show that Randy was not competent to perform the tasks in which he was engaged; that Abeyta's injuries were attributable to that incompetency; that Hensley knew or should have known of Randy's incompetence; and that Abeyta did not know of such incompetence. *Lemos v. Madden*, 28 Wyo. 1, 200 P. 791 (1921); *McCollum v. Smith*, 339 F.2d 348 (9th Cir. 1964) (knowledge of incompetency by employer); *First National Bank of Montgomery v. Chandler*, 144 Ala. 286, 39 So. 822 (1905); *Indianapolis & G. R. T. Co. v. Foreman*, 162 Ind. 85, 69 N.E. 669 (1904) (lack of knowledge of incompetency by injured employee); *Reed v. Koch*, 220 Mo. App. 175, 282 S.W. 515 (1926); *Consolidated Coal & Min. Co. v. Clay's Adm'r.*, 51 Ohio St. 542, 38 N.E. 610 (1894).

■ The evidence favorable to Abeyta shows that Randy admitted to him that he had mounted the tire that caused Abeyta's injuries knowing that it had a cut in the bead. It also demonstrates that Randy had been employed at the tire repair shop for at least as long as Abeyta worked there. Abeyta spoke to Hensley once about Randy to express his concern about the fact that Randy worked alone in the evenings. He suggested that if Randy were injured no one would be present to assist him. Abeyta testified that Randy was a good worker, as did other individuals who were employed in the tire repair shop. There was no testimony as to any prior incident involving negligent work on the part of Randy, and there was no testimony of any complaints about Randy's job performance. The record, with the exception of this one incident, is silent as to any incompetence on the part of Randy; it is silent as to any knowledge of any incompetence on the part of Hensley; and it discloses at least equal knowledge on the part of Abeyta. We must agree with the trial court that there was insufficient

4. Ch. 142, S.L. of Wyoming 1977, § 27–311, p. 463.

evidence to submit the case to the jury on the theory that Hensley had knowingly hired and retained an incompetent employee whose negligence caused Abeyta's injury.

With respect to the assertion of unsafe working conditions, it is significant that Abeyta had worked for about two years performing tire repairs at other similar firms prior to his employment by the firm where he was injured. Abeyta seems to complain because there was only one available tire cage, which was used infrequently because it slowed the production in the shop to use it. Abeyta's conclusion was that the employees were expected to maintain a certain level of production in the tire repair business and they could not afford the time which was expended in using the tire cage even though it was available. The purpose of a tire cage is to protect the repairman from tire explosions such as the one that occurred in this instance. The tire cage was available to Abeyta at the time he was injured, but he did not use it.

Abeyta also complains that the air pressure system functioned in such a way that the pressure did fluctuate and often there was insufficient air pressure to inflate tires. The business also encompassed a tire recapping department which from time to time called upon the same air pressure system for use in pressurizing the recapping chambers. On those occasions the pressure in the system could be reduced. Abeyta's testimony in this instance, however, was that the air pressure was 180 pounds per square inch when he checked it, and fluctuations in the system, if they did occur on the other occasions, were not a causative factor in this instance. Furthermore, other evidence in the record does disclose that less pressure in the system would not create a hazard.

This aspect of Abeyta's contentions invokes the concepts summarized in *Mellor v. Ten Sleep Cattle Co.*, Wyo., 550 P.2d 500 (1976), and the cases which are cited in that opinion. We noted there that in discharging his duty to furnish a safe place to work an employer should furnish a safe place and also should furnish safe tools and sufficient employees. We said, however, that the risks to be guarded against are only those known by the employer or those that he is charged with knowing, and they may not be risks and dangers arising in the progress of the work. We also noted that according to 2 Restatement of the Law Second, Agency 2d, § 521, p. 49 (A.L.I.1958), a master is not liable to his servant for harm caused by unsafe conditions of employment if the servant, being cognizant of the risks, voluntarily enters or continues in the employment. Our examination of this record causes us to agree with the trial court that there was no evidence that Hensley failed to furnish Abeyta with a safe place to work. The record in addition demonstrates that Abeyta was as cognizant of the alleged unsafe conditions as Hensley could have been. Consequently we find no error in the granting of Hensley's motion for a directed verdict with respect to this theory of negligence, even if he had a duty like that of an employer.

The judgment of the district court is affirmed.

GUTHRIE, J., ret., concurs in the result.

ROSE, Justice, specially concurring.

I concur with the court's decision herein, but I do not wish my concurrence to be interpreted as expressing any opinion with respect to the constitutionality, under Article 10, Section 4, Wyoming Constitution, of the 1975 and 1977 legislative enactments extending worker's compensation immunity to "employees acting within the scope of their employment." § 27–12–103(a), W.S. 1977. This issue has not yet been decided by this court. Justice McIntyre, in *Markle v. Williamson*, Wyo., 518 P.2d 621, 625 (1974), offered remarks touching this issue but they were not approved by a majority of the court because the issue was not clearly before the court.