James Vernon BRYANT,
Appellant (Plaintiff),

v.

Brent HORNBUCKLE, Appellee
(Defendant),

Amoco Oil Company, a Maryland
corporation, (Defendant).

No. 86–99.

Supreme Court of Wyoming.

Dec. 10, 1986.

Robert C. Wilson, Casper, for appellant.

John E. Brooks and John I. Henley of Vlastos, Brooks & Henley, and David E. Westling, (argued), Casper, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

In this personal injury action appellant James Bryant appeals from an order granting summary judgment in favor of appellee Brent Hornbuckle. The sole issue we must decide is whether the trial court correctly determined that no genuine issue of material fact existed on the question of whether appellee's conduct constituted culpable negligence of a coemployee under § 27–12–103, W.S.1977.

We affirm.

Appellant's claim arises from injuries sustained while operating a water truck for Hornbuckle Contracting. At the time appellant's injuries occurred, Hornbuckle Contracting was engaged in a water hauling job for Amoco Production Company which involved the hauling of fresh water to Amoco's well site and hauling waste production water from the site. Waste production water normally contained some petroleum residues. Appellant drove and operated one of the trucks used to haul the water. The truck was equipped with a pressurized holding tank, air pump, hose, and a valve which could be placed in an open or shut position. If the valve was mistakenly left in the shut position in the wintertime, it could become frozen in that position. When this occurred, the truck operator could free the valve by applying heat with a butane torch. This procedure for thawing frozen valves was widely used in the water hauling industry, and it was a procedure that foreman Brent Hornbuckle instructed his truck operators to follow.

When appellant showed up for work on January 20, 1982, he discovered that the valve on the truck that he was to operate that day was frozen shut. He proceeded to thaw the valve with a butane torch, as he had done some twenty times before without incident. But this time disaster struck. After applying heat for 20 or 30 minutes, appellant opened the valve and the fumes from the tank ignited. An instantaneous

explosion occurred, hurling appellant to the ground and igniting his clothing. He rolled on the ground but in his panic rolled too quickly to put out the flames. Another driver ran to the scene, helped appellant to a snowy area, and jumped on him, smothering the fire with his body.

As a result of the accident appellant sustained severe burns over his upper body, causing scarring and disfigurement and necessitating several skin grafting operations. He also suffered a dislocated shoulder. Appellant filed a worker's compensation claim from which he received $12,000 in temporary benefits, a $12,000 permanent disability award, and payment of medical expenses.

■ Appellant has now filed suit against Brent Hornbuckle and Amoco, alleging that both parties were negligent in failing to adequately train and supervise him and failing to warn him of the dangers involved in the valve thawing procedure. In order to recover against Brent Hornbuckle and avoid the exclusive remedy provision of the Wyoming Worker's Compensation Act, appellant must demonstrate that Mr. Hornbuckle was a "culpably negligent" coemployee. Section 27-12-103, W.S.1977.

■ A party seeking summary judgment has the burden of demonstrating that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *O'Donnell v. City of Casper,* Wyo., 696 P.2d 1278, 1281 (1985). The purpose of summary judgment is to eliminate formal trials where only questions of law are involved and to pierce the formal allegations and reach the merits of a controversy where no material issue of fact is present. *England v. Simmons,* Wyo., 728 P.2d 1137 (1986). The standards we use in reviewing a trial court's grant or denial of summary judgment are stated in *England v. Simmons, supra:*

" 'When reviewing a summary judgment on appeal, we review the judgment in the same light as the district court, using the same information. * * * Upon examination of a summary judgment, we view

the record from the vantage point most favorable to the party opposing the motion, giving him all favorable inferences which may be drawn from the facts.' " (Citations omitted.) At 1141, quoting *Garner v. Hickman,* Wyo., 709 P.2d 407, 410 (1985).

In support of his motion, Mr. Hornbuckle filed an affidavit in which he stated that the butane torch method for thawing frozen valves was standard in the water hauling industry. He also stated that during his experience with Hornbuckle Contracting he was aware of no other incidents like the one involving appellant and that he "certainly did not expect or anticipate such an occurrence."

In resistance to the motion for summary judgment, appellant filed the affidavit of Ray Smith, the safety director for a local trucking company. In that affidavit Mr. Smith made the following statements:

"[I]t would be dangerous and hazardous to use a butane torch to thaw a frozen valve on a tank which had been used to haul water from a treator pit because of the possibility [of] crude oil residue in treator pit water.

"[T]he hazardous and dangerous nature of using a butane torch to thaw a frozen valve on a tank that has hauled anything other than fresh water has been widely known in the industry for a considerable length of time and has been a widely known fact during all of my working experience in the oil industry.

"There are several other methods which can be used to thaw a frozen valve other than using a butane torch * * *.

"Although a butane torch is commonly used to thaw frozen water valves on water tanks in the oil industry, it is nonetheless an unsafe and dangerous operation.

"In my opinion, it would be a reckless and dangerous procedure to allow the use or use a butane torch to thaw a frozen valve on a tank that has hauled anything other than fresh water without fully being aware of the dangerous and

hazardous condition and possible consequences."

Also appearing in the record is a portion of appellant's deposition which contains the following exchange between appellant and Mr. Hornbuckle's attorney:

"Q. And just to make sure I've got this right, you don't recall any conversations with either of the Hornbuckles or anybody else working for Hornbuckle about this accident that you specifically recall?

"A. I've talked to my brother about it, and he was working at the time for them.

"Q. What has he told you? Has he had conversations with the Hornbuckles that he told you about?

"A. He mentioned that after this happened—I don't know if it was Brent or Dick [appellee's father], but I think Brent had said, you know, 'Gosh, we always wondered if something like that could happen. We didn't know.' "

Appellant's deposition also reveals the fact that appellee himself used the butane torch method for thawing frozen valves and that he personally demonstrated the technique for appellant when appellant first encountered a frozen water valve.

■ Our review of the trial court's decision focuses on the concept of culpable negligence. Section 27–12–103(a) of the Wyoming Worker's Compensation Act provides:

"The rights and remedies provided in this act [§§ 27–12–101 through 27–12–804] for an employee and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer making contributions required by this act, or his employees acting within the scope of their employment *unless* the employees are *culpably negligent * * *.*" (Emphasis added.)

In order to recover against a coemployee under this section of the Worker's Compensation Act, a plaintiff must establish more than simple negligence; the coemployee's conduct must constitute "culpable" negligence. In *Barnette v. Doyle*, Wyo., 622 P.2d 1349, 1362 (1981), we defined the term

"culpable negligence" as "willful and serious misconduct." We defined the term "willful" in this context as " 'such as is done purposely, with knowledge—or misconduct of such a character as to evince a reckless disregard of consequences.' " *Id.,* quoting *Hamilton v. Swigart Coal Mine,* 59 Wyo. 485, 143 P.2d 203, 206, 149 A.L.R. 998 (1943).

■ The aggravating factor which distinguishes willful misconduct from ordinary negligence is the actor's state of mind. See Prosser and Keeton on Torts § 34 (5th ed. 1984). In order to prove that an actor has engaged in willful misconduct, one must demonstrate that he acted with a state of mind that approaches intent to do harm. Id. State of mind, of course, may be difficult to prove. Accordingly, courts allow a party to establish that willful misconduct has occurred by demonstrating that an actor has intentionally committed an act of unreasonable character in disregard of a known or obvious risk that is so great as to make it highly probable that harm will follow. Id.

■ We agree with the trial court's determination that appellant failed to raise a genuine issue of material fact on the question of culpable negligence. In support of his summary judgment motion, Mr. Hornbuckle produced evidence which demonstrated that he was conforming to an industry standard, that he himself used the butane torch method for thawing frozen water valves, that he was aware of no incidents similar to the one involving plaintiff, and that he did not anticipate or expect such an occurrence. This evidence constituted a prima facie showing that there was no genuine issue of material fact. If unrefuted, it demonstrated that Mr. Hornbuckle did not act with a "culpable" or "willful" state of mind. The harmful consequences were unknown to him; the risk was not obvious; it was not highly probable that harm would follow. Consequently, the burden of establishing a genuine issue of material fact shifted to appellant. *Harden v. Gregory Motors*, Wyo., 697 P.2d 283 (1985).

The affidavit of appellant's affiant, Mr. Smith, did not contain sufficient facts to meet this burden. Mr. Smith stated that the dangerous nature of the butane torch technique was "widely known in the industry" and that in his opinion the procedure was reckless. He also stated, however, that the procedure was commonly used. This evidence does not establish, directly or circumstantially, that Mr. Hornbuckle acted with the "quasi-intent" that is an essential element of culpably negligent conduct.

Appellant produced no evidence showing that Mr. Hornbuckle actually knew that an explosion was highly probable or that a high probability of an explosion was obvious. Appellant testified in his deposition that Mr. Hornbuckle (or his father) said that he "didn't know" whether such an accident could occur. Neither appellant nor Mr. Smith recited any similar instances of explosions occurring from the use of a butane torch on a tank that had contained produced waste water. As far as we can tell from the record, such an occurrence had never happened before, not only at Hornbuckle Contracting but in the entire water hauling industry.

We have observed that summary judgment is a drastic remedy which, as a general rule, is not appropriate in negligence actions. *O'Donnell v. City of Casper, supra*, 696 P.2d at 1280. This case, however, is not an ordinary negligence case. When the issue is simple negligence, summary judgment is often inappropriate because the trier of fact must determine whether an actor's conduct was reasonable under the circumstances. Culpable negligence, on the other hand, involves more than unreasonable conduct; it involves willfulness. When a party fails to raise a genuine issue of material fact on this element, summary judgment is appropriate.

It has been said that when state of mind is at issue and especially when willfulness of an actor's conduct is questioned, courts should be reluctant to grant summary judgment because the actor's credibility is often a central issue in such cases. See Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2730 (1983). If the evidence presented, however, does not raise sufficient doubt of an affiant's credibility, a party's desire to test his statements by a jury will not preclude summary judgment. Id. at 237–238. Appellant has raised little, if any, doubt concerning Mr. Hornbuckle's credibility; and any doubt that might exist is refuted by the fact that Mr. Hornbuckle used the very same procedure for thawing frozen valves that appellant used when he was injured.

Although appellee raised two additional issues on appeal, our decision on the question of culpable negligence makes it unnecessary for us to address those issues.

The district court's order is affirmed.