Betty GREENWOOD,
Appellant (Plaintiff),

v.

J.G. WIERDSMA, M.D., and Memorial
Hospital of Sweetwater County,
Wyoming, Appellees (Defendants).

No. 87–11.

Supreme Court of Wyoming.

Aug. 11, 1987.

F.M. Andrews, Jr. of Andrews and Anderson, P.C., Riverton, and Charles E. Hamilton of Hamilton Law Associates, P.C., Riverton, for appellant.

R.R. Bostwick and Roger E. Shumate of Murane & Bostwick, Casper, for appellee Wierdsma.

John C. Brooks of Vlastos, Brooks & Henley, P.C., Casper, for appellee Memorial Hosp. of Sweetwater County, Wyoming.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

This medical malpractice case presents three issues for review: (1) interpretation of the statute of limitations; (2) the propriety of the trial court's summary judgment for defendants, doctor and hospital; and (3) the hospital's claim of privilege from discovery access to the hospital credential committee's files and information. We reverse and remand.

## FACTS

Constituting only what was alleged, contended by affidavit, or portrayed by brief upon initial procedural summary-judgment disposition, and in no way determinative of what trial evidence may subsequently demonstrate, we are told that plaintiff Betty Greenwood (Greenwood) was an obstetric patient at Memorial Hospital of Sweetwater County, Wyoming, admitted on November 23, 1983 for imminent baby delivery, and where Dr. Wierdsma, her obstetrical physician, had hospital privileges. The day after her admission to the hospital, she gave birth to her child in the absence of the doctor, with only the obstetrical nurse to perform the delivery. In the course of delivery, the nurse manually tore her vagina and rectum. Nearly six hours after he had first been notified, and a quarter hour after the baby had been delivered, Dr. Wierdsma arrived at the hospital. At that time, ungowned and ungloved, he delivered the placenta and sutured Greenwood's torn vagina and rectum. Apparently from his failure to scrub or take other precautions against contamination, Mrs. Greenwood's wounds developed infection, including continuing injury in that the tear in the vagina into the rectal area was not properly closed and is now permanently infected. More than a simple bad-result medical-malpractice case is suggested by the appellant.

On November 18, 1985, Greenwood filed a civil damage complaint against Dr. Wierdsma and the hospital. She encountered difficulties in attempting to serve Dr. Wierdsma with the summons since he had moved to Durango, Colorado for a time, and then to Chowchilla, California, where personal service was finally made on February 27, 1986. In response, Dr. Wierdsma filed a motion for summary judgment on the ground that he had not been personally served within the two-year statute of limitations. The trial court granted him summary judgment, and plaintiff Greenwood appeals.

With regard to the hospital, Greenwood alleged that it failed to properly investigate, certify, or review Dr. Wierdsma's surgical skills and the procedure he performed on her; and further, that the hospi-

tal negligently permitted Dr. Wierdsma to perform such surgical procedures.[1]

In the course of discovery on this claim, Greenwood served numerous interrogatories seeking the records of Dr. Wierdsma's hospital privileges and all medical staff committee records touching on his accreditation. The hospital objected on the ground of statutory privilege pursuant to § 35-2-602, W.S.1977.

The hospital moved for summary judgment, and filed supporting affidavits by a nurse, Ms. Judith Cavanah, and a hospital administrator, Mr. John M. Ferry. Ms. Cavanah's affidavit stated that, in her opinion, the hospital's nursing staff was not negligent. Mr. Ferry's affidavit stated that, in his opinion, the hospital was also not negligent. Neither of the affidavits was supported by any records or facts to underlie the conclusions given. Greenwood moved to strike the two affidavits on the ground that the affidavits did not conform to Rule 56(e), W.R.C.P. which requires the affiant to state facts within personal knowledge and that documents in support of those facts must be attached.

The district court denied plaintiff's motion to strike the affidavits, and denied her motion to compel production of the hospital records, thus, in effect, precluding her from opposing the affidavits by factual information except by her and her father's historical observations, and then granted the hospital's motion for summary judgment. The summary judgment was based on the challenged affidavits which then were unopposed. As a result, Greenwood was out of court on the statute of limitations and denial of discovery defenses.

## ISSUES

We are presented with three issues:

I. The effect of Dr. Wierdsma's absence from Wyoming on the statute of limitations.

II. Contended district court error by relying upon rather than sustaining a motion to strike the affidavits of Cavanah and Ferry which supported the hospital's summary-judgment motion.

III. Scope of the discovery privilege provided in § 35-2-602, W.S.1977 for records and data relating to a physician's accreditation and hospital activities.

## THE STATUTE OF LIMITATIONS

The medical malpractice statute of limitations provides in relevant part:

"(a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought * * *

"(i) Within two (2) years of the alleged act, error or omission * * *." Section 1-3-107, W.S.1977.

The general statute supplements this provision:

"If a cause of action accrues against a person when he is out of the state, or has

---

1. In the original complaint of November 18, 1985, plaintiff included the negligence claim against the hospital. On July 7, 1986, plaintiff filed a motion to amend and a proposed amended complaint supported by affidavit, apparently in order to obviate an earlier presented defense of failure to make a claim under the Governmental Claims Act, § 1–39–101, et seq., W.S. 1977. The amended complaint seems to have deleted the entire Count II of the original complaint as a typographical error (the certification and privilege extending negligence claim). The hospital resisted plaintiff's motion to amend her complaint, but the trial court granted plaintiff's motion to file the amended complaint. The amended complaint was never filed, but was answered by defendant on November 18, 1986. On November 24, 1986, the trial court granted defendant's motion for summary judgment.

It is apparent from a review of the briefs that none of the litigants has the conception that Count II of the initial complaint was abandoned by plaintiff. In her brief, appellant states the nature of the case:

"* * * [A]nd further that the Hospital negligently failed to review Dr. Wierdsma's surgical skills and to review, suspend or revoke his hospital privileges."

Without trying to sort this issue out at the appellate level, we will proceed consistent with the parties' understandings as reflected in the appellate briefs, that Count II contained in the original complaint has not been inopportunely abandoned by virtue of its omission in the amended complaint.

For background on experiences with this doctor in the Sweetwater County Hospital, see *Beardsley v. Wierdsma*, Wyo., 650 P.2d 288 (1982).

absconded or concealed himself, the period limited for the commencement of the action does not begin to run until he comes into the state or while he is so absconded or concealed. If after the cause of action accrues he departs from the state or absconds or conceals himself, the time of his absence or concealment is not computed as part of the period within which the action shall be brought." Section 1–3–116, W.S.1977.

Neither statute presents any ambiguity as applied in this case, and it is not necessary to go further than the clear language to decide the issue. After the cause of action accrued, Dr. Wierdsma departed from the state of Wyoming, and then, as the statute plainly states, during his absence, the statute was tolled.

In response, Dr. Wierdsma argues that the tolling provision is altered by the Wyoming long-arm statute, § 5–1–107, W.S. 1977:

"(a) A Wyoming court may exercise jurisdiction on any basis not inconsistent with the Wyoming or United States constitution.

"(b) When the exercise of personal jurisdiction is authorized by this section, service may be made outside this state and proved according to the Wyoming Rules of Civil Procedure or any order of the court."

This statute, taken from California, was obviously intended to provide the widest possible jurisdiction within the constraints of the United States Constitution and decisions of the United States Supreme Court. Dr. Wierdsma correctly points out that the long-arm statute extends to Wyoming courts in-personam jurisdiction over certain classes of nonresident defendants, but then conjecturally contends that because the long-arm statute allows service of process outside the state, the statute of limitations could not have been tolled merely by his absence.

We observe that generally a person can only be served when and where he can be found, and this reality is not changed by the Wyoming long-arm statute. The policy behind the tolling provision in the statute of limitations is not rescinded by the existence of the long-arm statute, since only if Greenwood had known where to find Dr. Wierdsma, would the long-arm statute operate to permit effective service.[2]

Dr. Wierdsma relies heavily on the case of *Summerrise v. Stephens*, 75 Wash.2d 808, 454 P.2d 224 (1969). In that case the issue was whether the statute of limitations was tolled by the defendant's absence from the state *during a period when the plaintiff was aware of the claimed tortfeasor's place of residence* and had available to him the right to proceed under the long-arm statute. The Summerrise court held that the statute was not tolled. However, this case is different. The record indicates that Greenwood was not aware of Dr. Wierdsma's place of residence. We do not disagree that she had the right to serve Dr. Wierdsma under the long-arm statute as she ultimately did, but the long-arm statute cannot come into play until the plaintiff has some knowledge of where the defendant can be found in order to provide effective service.

The trial court relied on *Tarter v. Insco*, Wyo., 550 P.2d 905 (1976) to support its refusal to toll the statute during Dr. Wierdsma's absence. We fail to see the applicability of the Tarter case. That case simply held that the tolling provision of the statute of limitations was not applicable when a statute allowed service upon a nonresident motorist to be accomplished by serving the Secretary of State. The case at bar does not involve alternative service of process upon an available designated agent for service which would defeat the purpose of the tolling provision. See *Midway Oil Corporation v. Guess*, Wyo., 714 P.2d 339 (1986).

**2.** Indeed, if the record demonstrated that the plaintiff knew where to find the defendant, the long-arm statute, when read *in pari materia* with the statute of limitations, might operate to defeat the tolling provision, but that issue is not now before us and will not here be decided.

Since plaintiff did not know defendant's whereabouts, she was unable to take advantage of the Wyoming long-arm statute in obtaining service of process on Dr. Wierdsma, and the tolling language of the statute of limitations is clearly in effect.

In summary, Dr. Wierdsma was gone from Wyoming, and the statute of limitations was tolled in accord with its language.

*Due Diligence*

 Dr. Wierdsma claims that even though he was gone from the state of Wyoming, the plaintiff could have determined where he was residing by a more diligent search. In response, the plaintiff presented affidavits by her attorney and his legal assistant which detail their efforts to locate Dr. Wierdsma. Those affidavits indicate that plaintiff knew that Dr. Wierdsma was no longer in Rock Springs, either had been or still was located in Colorado, and may have gone to California. Nonetheless, the district court found that:

"[t]he plaintiff has failed to use due diligence in ascertaining the whereabouts of the defendant and having so failed, has permitted the statute of limitations to run."

The district court also stated:

"Mr. Hamilton, then plaintiff's attorney, learned in July, 1984, about 8 months after the alleged negligent act, that Dr. Wierdsma had gone to California. He knew he was a physician probably practicing in California. He had almost a year and a half to ascertain his location. He could have asked the California Medical Association, or its equivalent, what his address was. There is a directory available similar to Martindale-Hubbell listing all physicians which he could have checked. He could have asked the hospital his address. It appears he did none of those things. * * * He failed to use due diligence in finding Dr. Wierdsma."

There is no evidence in the record that demonstrates that the plaintiff knew Dr. Wierdsma was practicing in California. Neither is there any evidence that Dr. Wierdsma was listed in any medical association directory. Finally, there is no evidence that hospital personnel knew or would have divulged to plaintiff Dr. Wierdsma's current address.

 The issue is only academic, since the statute of limitations enacted by the legislature does not impose upon plaintiff the requirement that he use due diligence in determining the out-of-state whereabouts of the defendant to be served and, in fact, both parties concede that due diligence is not the standard that will determine whether the tolling provision is applicable.

Although not necessarily determinative, the record before us demonstrates only that the plaintiff did not know where to find the defendant, who was absent from Wyoming. Under the plain language of the Wyoming statutes, Dr. Wierdsma's absence from Wyoming tolled the statute of limitations. We do not here create any due-diligence limitations to add to the language of the statute of limitations. We will leave for the legislature any policy-decision changes to the tolling statute, § 1–3–116.

## THE AFFIDAVITS

 We have often proclaimed that to be entitled to summary judgment, the movant has the burden to clearly demonstrate that there is no genuine issue of material fact. *Shanor v. A–Pac, Ltd.*, Wyo., 711 P.2d 420, 421 (1986); *Hickey v. Burnett*, Wyo., 707 P.2d 741, 744 (1985); *Kover v. Hufsmith*, Wyo., 496 P.2d 908, 910 (1972); *Cordova v. Gosar*, Wyo., 719 P.2d 625 (1986). Mindful of this burden, we now proceed to consider the affidavits upon which the district court granted summary judgment.

Wyoming's summary-judgment rule, Rule 56, W.R.C.P., is identical to the federal rule. In *Hickey v. Burnett*, supra, this court considered Rule 56(e), W.R.C.P., and stated:

"The Wyoming Rules of Civil Procedure were adopted to promote an orderly and efficient means for the handling and disposing of litigation. Compliance with these rules of procedure in summary judgment matters is mandatory." 707 P.2d at 745.

Rule 56(e), in specific terminology, *requires* that affidavits:

1. be made on personal knowledge;

2. set forth facts which are admissible in evidence;

3. demonstrate the competency of the affiant to testify on the subject matter of the affidavit; and

4. have attached to them the papers and documents to which the affidavit refers.

Mr. Ferry's affidavit states:

"1. That he is the Executive Director of Memorial Hospital of Sweetwater County, Rock Springs, Wyoming, and makes this Affidavit in behalf of said hospital, a defendant in the above-entitled case.

"2. That affiant has *examined the records* of Memorial Hospital of Sweetwater County as they existed on November 25, 1983, and finds that Dr. J.G. Wierdsma was a physician duly licensed to practice in the State of Wyoming, who had been granted privileges to practice in Memorial Hospital of Sweetwater County, Rock Springs, Wyoming; that *there was nothing in said records* to indicate that Dr. Wierdsma was not qualified to act as an obstetrician and gynecologist or that he should not be allowed to be the attending physician in childbirth cases.

"3. To the contrary, *the records reflect* that Dr. Wierdsma was a qualified obstetrician-gynecologist who had in the past and was able to provide proper pre and post natal care, as well as deliver babies.

"4. Based on my experience as a hospital administrator *and the records pertaining to Dr. Wierdsma*, it is my opinion that the Hospital acted with the applicable standard of care in the above case; was not negligent in any manner; and exercised the skill, diligence and knowledge, and applied the means and methods which would be exercised and applied under similar circumstances by hospitals." (Emphasis added.)

Because Mr. Ferry examined the hospital's records pertaining to Dr. Wierdsma, it appears that his affidavit was made on personal knowledge. However, Mr. Ferry's affidavit falls short of the Rule 56(e) requirements in two respects. First, the documents Mr. Ferry reviewed and to which he referred were not attached to his affidavit. Second, Mr. Ferry's affidavit sets forth no facts; it merely makes categorical assertions and states bald conclusions.

The very facts upon which Mr. Ferry's conclusions are premised are claimed by the hospital to be inadmissible because they are privileged.

■ Next, we examine Ms. Cavanah's affidavit. After outlining her background to establish her expertise as a nurse, which is not in dispute, Ms. Cavanah's affidavit states:

"4. I have *reviewed the medical records* of the Plaintiff, Betty Greenwood, relative to her stay at the Memorial Hospital of Sweetwater County, as well as Riverton Memorial Hospital.

"5. It appears that on November 24, 1983 the Plaintiff was admitted to Memorial Hospital of Sweetwater County for the delivery of a child.

"6. In connection with that admission, the plaintiff did deliver a baby girl.

"7. As a result of the labor progressing quickly at its later stages, it became necessary for the nurse on duty to ultimately deliver the baby. Almost immediately thereafter, care of the mother was turned over to Dr. Wierdsma.

"8. That the mother received a first degree laceration as a result of the delivery. That the laceration was taken care of by Dr. Wierdsma.

"9. That the Plaintiff was thereafter discharged on November 25, 1983.

"10. From *my review of the records*, it appears that the assessments made and the care and treatment rendered by the nursing staff at Memorial Hospital of Sweetwater County to the Plaintiff were proper in all respects. In that regard, it is my opinion that the nursing staff of Memorial Hospital of Sweetwater County exercised the skill, diligence and knowledge and applied the means and methods which would reasonably be exercised and applied under similar circumstances by members of the nursing profession in good standing." (Emphasis added.)

Ms. Cavanah's affidavit also suffers from both the defects present in Mr. Ferry's affidavit. First, the records to which the affidavit refers 'were not attached. Second, the factual basis for the conclusions in her affidavit is absent. Ms. Cava-

nah's affidavit does reveal some general facts about the appellant's case: the date the appellant was admitted to the hospital; that she delivered a baby girl; that the nurse delivered the baby; that the appellant received a first-degree laceration as a result of the delivery; that Dr. Wierdsma "took care" of the laceration; and that the appellant was discharged the next day. Yet none of those facts is relevant to or support the conclusion contained in paragraph 10. She fails to explain what happened and why the plaintiff's present condition resulted. We certainly are not told what hospital supervision or care contribution existed.

We have previously ruled that conclusory[3] affidavits which do not contain facts to support the conclusions have little or no weight. *State v. Vines*, 49 Wyo. 212, 54 P.2d 826 (1936). More recently, we held that courts cannot properly consider those portions of an affidavit which are categorical assertions and conclusions. *Natrona County v. Casper Air Service*, Wyo., 536 P.2d 142 (1975); *Wells v. Jeep Corporation*, Wyo., 532 P.2d 595 (1975).

Thus, the district court should not have considered paragraphs 2, 3, and 4 of Mr. Ferry's affidavit. Nor was it permissible to consider paragraph 10 of Ms. Cavanah's affidavit. The only substantive contents of the two affidavits were those portions which cannot be considered under *Natrona County v. Casper Air Service*, supra, and *Wells v. Jeep Corporation*, supra, because they fail to meet the mandatory requirements of Rule 56(e). In *Newton v. Misner*, Wyo., 423 P.2d 648, 650 (1967), we stated, "it is proper that matter which fails to meet the requirements of Rule 56(e) be stricken on motion." The affidavits should have been stricken or at least disregarded, and the district court's failure to do so was error. Movant did not get past stage three in the *Cordova v. Gosar*, supra, analysis which requires substantive sufficiency of the affidavits to support the summary-judgment motion.

When stripped of their unsupported conclusions, the affidavits submitted on behalf of the hospital in no way assist the hospital's claim for summary judgment. *Wells v. Jeep Corporation*, supra. Without the conclusory paragraphs, the affidavits do nothing to controvert the assertions of the appellant's pleadings. Summary judgment may only be entered upon that evidence which is in the record and properly before the court. *Shanor v. A–Pac, Ltd.*, supra, 711 P.2d 420. Thus, it was error for the trial court to grant the defendant summary judgment based on the affidavits of Mr. Ferry and Ms. Cavanah.

Furthermore, Rule 56(e) also provides that:

"* * * When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of his pleading * * *."

In this case, neither Mr. Ferry's nor Ms. Cavanah's affidavit was supported as required by Rule 56(e). Therefore, the language in the rule which precludes the plaintiff from resting on the allegations in her complaint is inapplicable. See *Fugate v. Mayor and City Council of Town of City of Buffalo*, Wyo., 348 P.2d 76 (1959). In other words, because Mr. Ferry's and Ms. Cavanah's affidavits were insufficient and ineffectual, the appellant was entitled to rest upon the allegations contained in her complaint. In the absence of adequate supporting affidavits, the motion for summary judgment must be confined to a decision under Rule 12(b)(6), W.R.C.P., dismissal for failure to state a claim. We have no doubt that the appellant's complaint states a cause of action and is not properly terminated by summary judgment.

Finally, this court has had occasion to examine the use of summary judgment in negligence actions. We have stated:

"* * * Summary judgments are not commonly interposed and even less fre-

---

**3.** After painstaking deliberation, we have decided that we like the word "conclusory," and we are distressed by its omission from the English language. We now proclaim that henceforth

"conclusory" is appropriately used in the opinions of this court. Furthermore, its usage is welcomed in briefs submitted for this court's review. ·Webster's, take heed!

quently granted in negligence actions—because issues of negligence do not often lend themselves to summary adjudication." *Timmons v. Reed*, Wyo., 569 P.2d 112, 116 (1977).

See also, *Connett v. Fremont County School District No. 6*, Wyo., 581 P.2d 1097 (1978); *Gilliland v. Steinhoefel*, Wyo., 521 P.2d 1350 (1974); and *Forbes Company v. MacNeel*, Wyo., 382 P.2d 56 (1963).

▬▬▬ This statement is particularly applicable to this case. A party to a negligence action cannot prevail through summary judgment merely by asserting a position on an ultimate fact in the supporting affidavit. In *Wells v. Jeep Corporation*, supra, 532 P.2d at 597, we examined an affidavit submitted on behalf of the appellant and concluded:

"* * * [T]his is obviously a conclusion and a categorical assertion of an ultimate fact. This cannot be used to defeat a summary judgment * * *."

Likewise, neither can a conclusion and categorical assertion of an ultimate fact made by affidavit *support* a summary judgment. The district court's summary judgment in favor of the defendant hospital is reversed. See *Cordova v. Gosar*, supra, 719 P.2d 625.

## PRIVILEGE

The privilege statutes at issue in this case provide:

"All reports, findings, proceedings and data of such hospital medical staff committees shall be confidential and privileged." Section 35–2–602, W.S.1977.

"As used in this act [§§ 35–2–601 to 35–2–604], 'data' means all reports, notes, findings, opinions or records of any hospital medical staff committee, including its consultants, advisors and assistants. As used in this act, 'hospital medical staff committee' means any committee within a hospital, consisting of medical staff members or hospital personnel, which is engaged in supervision, discipline, admission, privileges or control of members of the hospital's medical staff, evaluation and review of medical care, utilization of hospital facilities or professional training." Section 35–2–604, W.S. 1977.

In order to properly understand the privilege, it is helpful to first examine the context in which the privilege is asserted. This lawsuit includes a claim that the hospital was negligent in granting the doctor the privilege to practice in that hospital as an obstetrician. Specifically, Greenwood contends that the hospital failed to exercise that degree of care and skill usually exercised or maintained by other reputable hospitals in the extension of medical privileges to Dr. Wierdsma. See *Johnson v. Misericordia Community Hospital*, 97 Wis.2d 521, 294 N.W.2d 501, 513 (1980), aff'd 99 Wis.2d 708, 301 N.W.2d 156 (1981).

In order to prove such negligence by the hospital, a plaintiff must have access to information concerning a doctor's performance. That same information most likely will be considered by and is, pursuant to § 35–2–602, available to the medical staff committee. A necessary consequence of construing the privilege statute to preclude a plaintiff's access to all information which is relevant to a doctor's accreditation, is to prohibit causes of action against hospitals for negligence in the accreditation and maintenance of qualified medical personnel. Thus, in determining the scope of the statutory privilege, we are also deciding whether the legislature, by enacting the privilege statute, intended to abrogate the right to recover for this type of hospital negligence. We think it did not.

Article 1, § 8 of the Wyoming Constitution provides in part:

"All courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay."

While this general guaranty that judicial relief is available for injuries is not a guaranty of any specific relief, at least presumptively, commonly recognized causes of action are encompassed and protected. The appellant's cause of action against the hospital in this case is increasingly recognized in other jurisdictions. See cases cited in Annot., 51 A.L.R.3d 981, and Annot., 12 A.L.R.4th 57.

We agree with the common-sense policy statements and observations made by courts in other jurisdictions:

"* * * 'One of the hospital's primary functions is to screen its staff of physicians to "insure" that only competent physicians are allowed to practice in the hospital.'" *Johnson v. Misericordia Community Hospital,* supra, 294 N.W.2d at 512, quoting from *Ferguson v. Gonyaw,* 64 Mich.App. 685, 236 N.W.2d 543, 550 (1975).

See also *Hull v. North Valley Hospital,* 159 Mont. 375, 498 P.2d 136 (1972). The *Johnson* court discussed a number of cases from various jurisdictions, and concluded:

"The thrust of the above-mentioned cases is obviously to require hospitals to closely monitor admission to the medical staff, and, if warranted, to revoke or limit privileges already extended." *Johnson v. Misericordia Community Hospital,* supra, 294 N.W.2d at 512–513, n. 10.

 This requirement amounts to a legal duty imposed upon the hospital to exercise that degree of care and skill usually exercised or maintained by other reputable hospitals in the extension and continuation of medical staff privileges to physicians. Annot., 51 A.L.R.3d 981, supra; Annot., 12 A.L.R.4th 57, supra. See *Board of Trustees of Memorial Hospital of Sheridan County v. Pratt,* 72 Wyo. 120, 262 P.2d 682 (1953), as a recognition of a hospital responsibility. Cf. *Bishop Randall Hospital v. Hartley,* 24 Wyo. 408, 160 P. 385 (1916); Southwick, *The Hospital as an Institution—Expanding Responsibilities Change Its Relationship With the Staff Physician,* 9 Cal.W.L.Rev. 429 (1972).

This legal duty is apparent from the Wyoming statutes. Section 35–2–601, W.S. 1977, provides:

"Subject to by-laws and control by the hospital governing body, the medical staff committees of any hospital shall have access to the records, data and other information relating to the condition and treatment of patients in any such hospital in this state, for the purposes of supervision, discipline, admission, privileges or control of members of such hospital's medical staff; evaluating, studying and reporting on matters relating to the care and treatment of such patients and patients generally, research, reducing mortality, prevention and treatment of diseases, illnesses and injuries; and determining if a hospital and extended care facilities are being properly utilized."

This statute gives hospitals the means to carry out their duty to properly accredit and maintain staff or qualified medical personnel by giving the hospital's medical staff committee access to the necessary records. Certainly, legislation which fosters a hospital's ability to meet its legal obligations demonstrates legislative recognition that indeed such an obligation exists. The citizens of this state are without doubt entitled to institute civil suits to recover for injuries caused by a hospital's failure to perform its obligations.

If the legislature had wanted to prohibit actions against hospitals for breaching their duties to properly supervise the qualifications and privileges of their medical staffs, it would have done so expressly.[4] We will not construe the privilege statute to impliedly prohibit this category of negligence actions. See rationale for use of hospital records as evidence, Hale, *Hospital Records as Evidence,* 14 S.Cal.L.Rev. 99 (1941), and Note, *Admissibility of Hospital Records in Evidence: Federal Shop Book Statute,* 54 Yale L.Rev. 868 (1945).

 The continued availability and vitality of such causes of action serve an important public policy—the preservation of quality health care for the citizens of this state.

"Having undertaken one of mankind's most critically important and delicate fields of endeavor, concomitantly therewith the hospital must assume the grave responsibility of pursuing this calling

---

4. In addition to Art. 1, § 8 of the Wyoming Constitution, we cannot be unmindful of Art. 10, § 4, which states:

"No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person."

with appropriate care. The care and service dispensed through this high trust, however technical, complex and esoteric its character may be, must meet standards° of responsibility commensurate with the undertaking to preserve and protect the health, and indeed, the very lives of those placed in the hospital's keeping." *Beeck v. Tucson General Hospital,* 18 Ariz. App. 165, 500 P.2d 1153, 1157 (1972), quoted in *Johnson v. Misericordia Community Hospital,* supra, 294 N.W.2d at 510–511.

" * * * The [committee] in turn must inevitably render public accountability for the effective discharge of those functions. Achievement of the goal of good patient care is a direct result of an organization's effectiveness in identifying less-than-ideal patterns of practice in its potential staff. Without diligence in the areas of preventive and corrective measures by its governing members, a hospital could easily develop into an enclave of professional obsolescence and gross incompetence." *Johnson v. Misericordia Community Hospital,* 294 N.W.2d at 507.

■ One of the primary purposes of a hospital's medical staff committee is to ensure the dispensation of competent medical care. Section 35–2–601, W.S.1977; *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058 (7th Cir.1981). A negligence action in civil court, in part, serves the same purpose by imposing liability on the hospital for its failure to exercise reasonable care and skill in the performance of the committee's tasks. Because the committee's activities and civil actions are to some extent duplicative, information necessary to the pursuit of a civil action will undoubtedly overlap with information considered by the committee. The burden of establishing entitlement to nondisclosure rests with the party resisting disclosure and not the party seeking it. *Matchett v. Superior Court for Yuba County,* 40 Cal. App.3d 623, 115 Cal.Rptr. 317 (1974).

■ The district court relied on §§ 35–2–602 and 35–2–604, quoted above, to deny the plaintiff discovery access to all the hospital's personnel records pertaining to Dr. Wierdsma. A careful reading of those statutes indicates that documents which detail the committee's decision-making process, opinion, perspective, or final decisional results are not discoverable. The privilege protects from discovery the records concerning the internal proceedings of the hospital committee but does not exempt from discovery materials which the committee reviews in the course of carrying out its function, nor action which may be taken thereafter by the hospital as may be influenced by the committee decision. In short, privileged data does not include the materials reviewed by the committee, only those documents produced by the committee as notes, reports and findings in the review process. *Matchett v. Superior Court for Yuba County,* supra. Furthermore, we are concerned here with discovery, and imply no conclusion when admissibility at trial may present relevancy and similar questions. *Marchand v. Henry Ford Hospital,* 398 Mich. 163, 247 N.W.2d 280 (1976).

■ We recognize that if the committee's activities were admissible, then a party to a negligence action, be it plaintiff, physician or hospital, could rely upon the committee to provide an expert opinion on the ultimate issue of negligence. In addition to the free-flowing constructive criticism protection, it is apparent that a further intent behind the privilege statute is to prevent the staff committee's activities from providing the proof in civil actions against the hospital and physicians. *Bredice v. Doctors Hospital, Inc.,* 50 F.R.D. 249 (D.D.C.1970), aff'd 156 U.S.App.D.C. 199, 479 F.2d 920 (1973). See, however, *Oviatt v. Archbishop Bergan Mercy Hospital,* 191 Neb. 224, 214 N.W.2d 490 (1974). However, the statute was not intended to exempt from discovery all relevant information and thereby preclude the possibility of proving negligence. The broad application of privilege in this case was improper. *Schulz v. Superior Court for Yolo County,* 66 Cal.App.3d 440, 136 Cal.Rptr. 67 (1977); *Marchand v. Henry Ford Hospital,* supra; Annot., 81 A.L.R.3d 944, Dis-

covery of Hospital's Internal Records. An excellent and constructive article on the confined subject is Hall and Hyg, *Hospital Committee Proceedings and Reports: Their Legal Status*, 1 Am.J.Law and Medicine 245 (1975).

## CONCLUSION

Summary judgment in favor of defendants doctor and hospital is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.