**Rebecca ROMERO, Appellant (Plaintiff),**

v.

**Kenneth W. SCHULZE, M.D.; and Board of Trustees of Memorial Hospital of Carbon County, d/b/a Carbon County Memorial Hospital, Appellees (Defendants).**

No. 98–112.

Supreme Court of Wyoming.

March 19, 1999.

Michael Rosenthal, Dominique D.Y. Cone, and Martin L. Hardsocg of Hathaway, Speight & Kunz, LLC, Cheyenne, Wyoming, Representing Appellant.

George E. Powers, Jr. of Sundahl, Powers, Kapp & Martin, Cheyenne, Wyoming, Representing Appellees.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

MACY, Justice.

Appellant Rebecca Romero appeals from the summary judgment which was entered in favor of Appellee Kenneth Schulze, M.D. and from the order which dismissed her lawsuit against Appellee Board of Trustees of Memorial Hospital of Carbon County, d/b/a Carbon County Memorial Hospital (the hospital).

We reverse and remand.

## ISSUES

Romero presents the following issues for our review:

A.   In light of prior representations to the public which indicated that Dr. Schulze was not a public employee, should the Appellees be allowed to invoke the Wyoming Governmental Claims Act?

B.   Based upon the terms of his employment contract and his qualifications as a surgeon, was Dr. Schulze acting within the scope of his duties as defined in the Wyoming Governmental Claims Act?

C.   Did Romero provide timely notice, as required by the Wyoming Governmental Claims Act, within two years of discovering her causes of action against Memorial Hospital?

* Retired November 2, 1998.

## FACTS

Romero worked as a housekeeper for Rip Griffin's Truck Stop in Rawlins. On August 26, 1994, she accidentally cut the little finger of her right hand with a knife while she was opening a cardboard box. Romero was admitted to the hospital where she was examined by Dr. Schulze, an orthopedic surgeon. Dr. Schulze diagnosed two severed tendons and recommended immediate surgery. Romero consented to the surgery and signed the hospital's conditions-of-service form, which provided in part: "The undersigned recognizes that all doctors furnishing services to the patient, including the radiologist, pathologist, anesthesiologist and the like are independent contractors and are not employees or agents of the hospital." Dr. Schulze performed the surgery on Romero's finger later that evening.

In mid-September 1994, Dr. Schulze prescribed occupational therapy for Romero, which she participated in until she moved to Albuquerque, New Mexico, in mid-November of 1994. Despite the therapy, Romero began experiencing inflammation; swelling; stiffness; a flexion contracture (claw hand); and loss of motion, atrophy, and pain in the fingers of her right hand, wrist, and arm. Dr. Schulze provided ongoing medical care to Romero until her mid-November move.

Pursuant to a referral from Dr. Schulze, Romero began receiving medical treatment in mid-November from Laurel D. McGinty, M.D., an orthopedic surgeon and hand specialist in Albuquerque. She continued therapy but saw little improvement in her condition. On August 18, 1995, Dr. McGinty amputated Romero's right little finger.

Romero filed a lawsuit against Dr. Schulze on August 23, 1996, alleging negligence. After receiving an extension of time in which to respond, Dr. Schulze answered Romero's complaint on October 7, 1996. In paragraph 31 of Dr. Schulze's answer, he pleaded the following affirmative defense:

The Defendant, acting within the scope of his duties as an employee of Memorial Hospital of Carbon County, a governmental entity, affirmatively alleges immunity from tort liability except as specifically provided under the Wyoming Governmental Claims Act §§ 1–39–101 through 1–39–120 and hereby invokes all of the limitations, requirements and protection of said Act.

Romero subsequently served interrogatories, requests for production of documents, and requests for admission on Dr. Schulze. On November 19, 1996, Dr. Schulze responded to Romero's discovery requests and disclosed that he had been an employee of the hospital during the time he treated Romero. He also produced a copy of his 1994 employment contract.

Dr. Schulze moved for a summary judgment, claiming that Romero

a. last saw and treated with Dr. Schulze on October 27, 1994;

b. was discharged November 15, 1994, from the occupational therapy (ordered by Dr. Schulze) so as to move to New Mexico; and

c. formally became the patient of Dr. Laurel D. McGinty of Albuquerque, New Mexico thereafter.

He argued that, although Romero filed her lawsuit within the two-year statute of limitations for negligence actions, she failed to serve notice of her claim pursuant to the Wyoming Governmental Claims Act under which he claimed protection by virtue of his status as a public employee of a governmental entity.

Romero opposed Dr. Schulze's motion for a summary judgment, asserting, among other things, that Dr. Schulze's employment by the hospital was unknown to her and was not reasonably ascertainable before the two-year notice period expired. Romero argued that she was under the impression that Dr. Schulze was an independent contractor until November 19, 1996, just days after the two-year period had run, because all her interactions with Dr. Schulze supported that conclusion.

The district court granted Dr. Schulze's motion for a summary judgment. It reasoned that Dr. Schulze's affirmative defense put Romero on notice of his employment status on October 7, 1996, which gave her approximately five weeks to give notice of her claim. The district court decided that

Romero's failure to serve a notice of her claim within the two-year period required by the Wyoming Governmental Claims Act deprived the district court of subject matter jurisdiction and, therefore, barred her cause of action against Dr. Schulze.

On May 13, 1997, Romero served the hospital with notices of claims concerning her independent allegations against the hospital of negligent hiring and supervision. She was granted leave to amend her complaint to add the hospital as a defendant on July 22, 1997, and she filed her first amended complaint on August 28, 1997, in which she pleaded, among other things, negligent hiring and negligent supervision causes of action against the hospital. The hospital subsequently filed a motion to dismiss Romero's complaint, claiming protection under the Wyoming Governmental Claims Act's two-year notice-of-claim requirement.

The district court granted the hospital's motion to dismiss Romero's complaint, finding that Romero did not give notice of her claim within the two-year period required by the Wyoming Governmental Claims Act. Romero appeals from the summary judgment which was entered in favor of Dr. Schulze and from the order which dismissed her causes of action against the hospital.

## STANDARD OF REVIEW

A summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. *Estate of Noell v. Norwest Bank Wyoming, N.A.,* 960 P.2d 499, 500 (Wyo.1998). Because a dispute does not exist with regard to the material facts, the question presented for our review is one of law. *Id.* We do not accord special deference to the district court's decisions on matters of law. *Id.*

We will affirm a dismissal of a complaint only if the complaint

shows on its face that the plaintiff was not entitled to relief under any set of facts. In considering such a motion, the "facts alleged in the complaint are admitted and the allegations must be viewed in the light

most favorable to plaintiffs." Dismissal is a drastic remedy, and is sparingly granted. *Mostert v. CBL & Associates,* 741 P.2d 1090, 1092 (Wyo.1987) (quoting *Moxley v. Laramie Builders, Inc.,* 600 P.2d 733, 734 (Wyo.1979)). *See also Harshfield v. Harshfield,* 842 P.2d 535, 536 (Wyo.1992).

## DISCUSSION

### A. Order Granting Summary Judgment

The Wyoming Governmental Claims Act was enacted in response to the "inherently unfair and inequitable results which occur in the strict application of the doctrine of governmental immunity." Wyo. Stat. Ann. § 1–39–102(a) (Michie 1997). Under the Wyoming Governmental Claims Act, governmental entities and public employees acting within the scope of their duties are generally immune from liability for the torts they commit. Wyo. Stat. Ann. § 1–39–104(a) (Michie 1997). Certain enumerated activities are specific exceptions to the general immunity rule. Wyo. Stat. Ann. §§ 1–39–105 to –112 (Michie 1997). Section 1–39–110(a) provides that "[a] governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of health care providers who are employees of the governmental entity ... while acting within the scope of their duties."

Before a suit can be brought against a governmental entity or public employee, however, certain procedures must be adhered to. Among those procedures is the notice-of-claims requirement, which provides in part:

(a) No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

(i) Not reasonably discoverable within a two (2) year period; or

(ii) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

Wyo. Stat. Ann. § 1–39–113(a) (Michie 1997).

Romero alleges that she did not serve notice of her claim within the original two-year period because Dr. Schulze's status as a public employee was unknown to her and was not reasonably ascertainable before the two-year notice period expired. She maintains that, prior to receiving Dr. Schulze's responses to her discovery requests, all indications were that Dr. Schulze was an independent contractor rather than an employee of the hospital. She emphasizes the following facts to support her argument:

1. Defendant Hospital's own "Conditions of Service" form, which . . . required Plaintiff Romero to sign before services would be provided to her, stated in part,

> The undersigned recognizes that **all doctors** furnishing services to the patient, including the radiologist, pathologist, anesthesiologist and the like **are independent contractors and are not employees or agents of the hospital.**

(emphasis added).

2. All of the care and treatment provided by Dr. Schulze following the surgical procedure he performed on Plaintiff Romero was provided at or from his private office in the Wagon Circle Medical Clinic located at 2012 West Elm Street, Rawlins, Wyoming. His office is separate and distinct from the hospital and is located two blocks away.

3. Dr. Schulze's office has a name (Wagon Circle Medical Clinic) unrelated and entirely distinct from the hospital. In addition, prior to the time Romero filed her complaint, the Wagon Circle Medical Clinic was a for-profit corporate entity inactive for failure to pay taxes, according to the Wyoming Secretary of State.

4. The Wyoming Board of Medicine responded to the inquiry of Romero's counsel about Dr. Schulze and indicated he was a licensed physician in Wyoming with an office address of 2012 West Elm Street, Rawlins, Wyoming 82301—the same street address as the Wagon Circle Medical Clinic.

5. When Plaintiff Romero visited Dr. Schulze for post-surgical care in his private office, she was given forms to fill out with the words "Wagon Circle Medical Clinic" and the separate address of the clinic at the top of the forms.

6. Several of the clinic's forms authorized payment of insurance or worker['s] compensation benefits directly to Wagon Circle Medical Clinic.

7. No mention of Memorial Hospital of Carbon County was contained on any of the forms given to Plaintiff Romero to fill out. In fact, the Wagon Circle Medical Clinic "Conditions of Service" form signed by Mrs. Romero prior to her first post-operative visit with Dr. Schulze in August, 1994, stated, in part:

> The bill for services is an agreement between you **and the clinic.**

(emphasis added).

8. The medical records pertaining to Plaintiff Romero's care by Dr. Schulze were created and maintained by him at the Wagon Circle Medical Clinic, separate and apart from the records maintained at the hospital.

9. During the time Dr. Schulze was providing care and treatment to Romero, he sent no correspondence or billing statements which in any way indicated that he was an employee of Memorial Hospital of Carbon County.

10. During the period of his care and treatment of Romero, Dr. Schulze did not wear any identification which would identify him as an employee of Memorial Hospital.

(Record citations omitted.)

■ The district court found that Romero had been placed on notice of Dr. Schulze's status as a public employee when she received his answer on October 7, 1996, in which he "clearly asserted his status as a public employee." Explaining that Wyoming is a "notice" jurisdiction, the district court opined that pleadings are only required to alert the adverse party of what it might expect and contain the operative facts that

will give fair notice of the claim. The district court decided that, because October 7, 1996, was within two years of the discovery of the alleged act, error, or omission, Romero forfeited her cause of action by failing to serve a notice of her claim sometime in the five or so weeks that followed.[1]

We disagree with the district court's finding that Dr. Schulze's "pleading was sufficiently specific to provide [Romero] with notice of the intended defense, and [Romero] had adequate time thereafter to file the required notice of claim." To the contrary, the affirmative defense merely informed Romero that Dr. Schulze was claiming to be an employee of the hospital at the time he filed his answer. In light of all the indications that Dr. Schulze was an independent contractor, he should have pleaded an affirmative defense clearly stating that, at the time of his alleged negligent conduct, he was an employee of the hospital. We hold that, as a matter of law, Romero did not have sufficient notice of Dr. Schulze's status as a public employee until November 19, 1996, when she received the discovery responses that clearly evidenced an employment relationship existed at the time Dr. Schulze rendered treatment for her injured hand. Dr. Schulze, therefore, was not entitled to a judgment as a matter of law, and the summary judgment in his favor is reversed.

## B. Order Granting Dismissal

Romero asserts that she provided timely notice to the hospital of her claims for negligent hiring and negligent supervision, arguing that the notice-of-claim time period did not commence until she became aware of the employment relationship and, therefore, of the hospital's negligence. The hospital claims that Romero could have brought her claims for negligent hiring and supervision in a timely manner without knowing that Dr. Schulze was employed by the hospital because her claims were not dependent upon the existence of an employment relationship.

The hospital relies on *Greenwood v. Wierdsma*, 741 P.2d 1079 (Wyo.1987), and

*Sharsmith v. Hill*, 764 P.2d 667 (Wyo.1988), in arguing that the employment relationship was of no consequence to Romero's claims for negligent hiring and supervision. It argues that, under these cases, hospitals are required to screen their physicians so that only competent physicians are allowed on staff and hospitals must supervise and review treatment rendered by the physicians to ensure quality health care is being rendered. *Greenwood*, 741 P.2d at 1088; *Sharsmith*, 764 P.2d at 673. The hospital claims that it is required to perform these duties regardless of whether its physicians are employees or only have staff privileges.

An important distinction exists between the point the hospital makes and the case at bar. Although we agree that the torts of negligent hiring and supervision do not depend upon an employment relationship, the hospital could potentially be liable under a respondeat superior theory. Traditionally, a hospital is not liable for the negligence of a physician who is an independent contractor. *Adamski v. Tacoma General Hospital*, 20 Wash.App. 98, 579 P.2d 970, 973 (1978). In this case, however, the physician was an employee of the hospital. Under the doctrine of respondeat superior, an employer is liable for the negligence of an employee who is acting within the scope of his employment. *Austin v. Kaness*, 950 P.2d 561, 563 (Wyo.1997). This Court has recognized that, if a physician is the employee of a hospital, the hospital may be held liable for the injuries negligently inflicted by the physician under the doctrine of respondeat superior:

> "Where a hospital holds itself out to the public as providing a given service, . . . and where the hospital enters into a contractual arrangement with one or more physicians to direct and provide the service, and where the patient engages the services of the hospital without regard to the identity of a particular physician and where as a matter of fact the patient is relying upon the hospital to deliver the desired health care and treatment, the doctrine of respondeat superior applies and the hospital is

---

1. The district court found that the two-year period expired November 14, 1996, two years after Romero was discharged from Dr. Schulze's care.

vicariously liable for damages proximately resulting from the neglect, if any, of such physicians."

*Sharsmith,* 764 P.2d at 672 (quoting *Hardy v. Brantley,* 471 So.2d 358, 371 (Miss.1985)).

■ Viewing the facts in the light most favorable to Romero, as we are obligated to do under our standard of review, we hold that Romero's complaint pleads sufficient facts to enable her to assert a respondeat superior cause of action and that she could not have known about this cause of action until she received clear evidence of the employment relationship. The district court's order granting the drastic remedy of dismissal is, therefore, reversed.

## CONCLUSION

Romero did not discover that Dr. Schulze was an employee of the hospital until November 19, 1996. The two-year notice-of-claim period under the Wyoming Governmental Claims Act, therefore, commenced on that date, and the summary judgment entered because of the failure to timely serve the notice of claim is reversed. Furthermore, because Dr. Schulze is an employee of the hospital, the hospital could potentially be held vicariously liable for Dr. Schulze's negligence under the doctrine of respondeat superior. The district court's order dismissing Romero's claims against the hospital is, therefore, also reversed.

LEHMAN, Chief Justice, dissenting, with whom THOMAS, Justice, joins.

I respectfully dissent. After analyzing Dr. Schulze's answer within the parameters of Wyoming's notice of pleading system, I am led inescapably to the conclusion that the pleading was sufficiently specific to provide Ms. Romero with fair notice of Dr. Schulze's status as a government employee.

Rule 8 of the Wyoming Rules of Civil Procedure provides, in pertinent part:

(b) *Defenses: form of denials.*—A party shall state in short and plain terms the party's defenses to each claim asserted....

...

(e) *Pleading to be concise and direct; consistency.*

(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

Under the Wyoming Rules of Civil Procedure, technical forms of pleadings are not required, and each averment of pleading should be simple, concise and direct. *Harris v. Grizzle,* 599 P.2d 580, 583 (Wyo.1979); *Guggenmos v. Tom Searl–Frank McCue, Inc.,* 481 P.2d 48, 51 (Wyo.1971). Whether the specificity standard has been satisfied is to be determined in terms of whether the pleadings give fair notice to the opposing party and not whether it contains conclusions. *Id.* Ignoring this legal framework, the majority writes: "In light of all the indications that Dr. Schulze was an independent contractor, he should have pleaded an affirmative defense clearly stating that, at the time of his alleged negligent conduct, he was an employee of the hospital." Maj. op. at 964. However, Dr. Schulze's answer contradicts the majority's assertion: "The Defendant, acting within the scope of his duties as an *employee* of Memorial Hospital of Carbon County, a governmental entity, affirmatively alleges immunity from tort liability ...." (emphasis supplied). It is hard to imagine how this allegation could be simpler, more concise, or more direct.

I would hold that Dr. Schulze's answer was sufficient to put Ms. Romero on notice that he was acting as a government employee during her treatment and care. I would, therefore, hold that Ms. Romero's subsequent failure to provide notice of her claim within the two-year limitations period operates to bar her suit against both Dr. Schulze and the hospital. *Cranston v. Weston County Weed and Pest Bd.,* 826 P.2d 251, 255 (Wyo.1992); *Duran v. Bd. of County Comm'rs of Sweetwater County,* 787 P.2d 971, 972–73 (Wyo.1990).